256 So.2d 140 (1971)
Otis PRIMEAUX, Plaintiff-Appellee,
v.
Henry KINNEY et al., Defendants-Appellants.
No. 3654.
Court of Appeal of Louisiana, Third Circuit.
December 2, 1971.
Rehearing Denied January 17, 1972.
Writ Refused February 29, 1972.
*141 Stockwell, St. Dizier, Sievert & Viccellio, by Robert W. Thomas, Lake Charles, for defendant-appellant.
Payton Covington, Lake Charles, for plaintiff-appellee.
Before FRUGE, CULPEPPER and DOMENGEAUX, JJ.
DOMENGEAUX, Judge.
This appeal concerns itself with an action in tort which came about as the result of a collision between a 1968 model Dodge van truck owned and being operated by the plaintiff Otis Primeaux and a Brangus bull allegedly belonging to the defendant Henry Kinney. The accident occurred on U. S. Highway 90 approximately seven miles east of Vinton, Louisiana in Calcasieu Parish at approximately 10:00 o'clock P.M. on October 4, 1969.
The record reflects that the plaintiff, who was accompanied by a guest passenger, was driving his aforementioned van truck in a westerly direction at approximately 45 miles per hour. He had left Sulphur, Louisiana and was heading for the Texas state line when he struck the animal which was standing in his lane of travel. At the time of the accident the plaintiff had dimmed his lights for an oncoming vehicle and he did not see the animal in question until immediately prior to the collision. He did not have an opportunity to apply his brakes. As a result of the collision plaintiff's vehicle careened into the south ditch of the highway, and the plaintiff sustained both personal injuries and property damage.
The plaintiff sued Henry Kinney and, by supplemental petition, his comprehensive liability insurer, The Fidelity & Casualty Company of New York. Following a trial on the merits, judgment was rendered in favor of plaintiff and against defendant Kinney. Insurance coverage was admitted, but for reasons unknown to us The Fidelity & Casualty Company of New York was not cast in the judgment. Defendant Kinney appealed to this court and plaintiff answered the appeal praying for an increase of the award.
The record reflects that the site of the accident was in an area generally recognized as being cattle country. There were numerous cattle owners whose herds were pastured on either side of and adjacent to the aforementioned highway. The defendant's cattle had been situated on acreage some three-fourths of a mile north of the highway. Numerous owners in the vicinity, including defendant Kinney, raised Brangus cattle which are a cross between Angus and Brahma and are black in color. Shortly before the accident Mr. Kinney had been engaged in his yearly practice of moving his cattle into another area for winter pasturage. This move was accomplished by the use of cattle vans. Admittedly the cattle brand utilized by Mr. Kinney is "T 11".
Applicable herein is LSA-R.S. 3:2803 which prohibits the owner of livestock from knowingly, wilfully or negligently permitting his livestock to roam at large upon certain public highways in this state. U. S. Highway 90 is one of the roads affected by that provision. Under this statute and the jurisprudence interpreting it, the owner of an animal which is struck upon a Stock Law Highway is imposed with the burden of freeing himself from negligence by showing that he has taken every precaution expected of a reasonably prudent individual to prevent his livestock from leaving their confines and roaming at large. Fortenberry v. McCoy, La.App., 233 So.2d 320, writ refused, 256 La. 252, 236 So.2d 31. Brown v. Fulton Insurance Company, La. App., 211 So.2d 412, writ refused, 252 La. 870, 214 So.2d 545. Colomb v. McDonald, La.App., 131 So.2d 84.
In his brief reasons for judgment the trial judge stated:
* * * "The court concludes the animal to be that of Henry Kinney * * * This accident happened during the period when the Kinney's were moving their cows to the [sic] Cameron Parish and *142 their bulls to another location in this area * * * The Court concludes that this bull someway got out or was overlooked and the defendants have not overcome the presumption they were without fault in this matter * * *"
In order for plaintiff to prevail in this case, he must first prove that the Brangus bull in question was the property of Mr. Kinney.
Appellant seriously contends that the plaintiff has failed to show him to be the owner of the bull in question. In this regard neither the plaintiff nor his guest passenger had any knowledge whatsoever of the ownership of the animal and the only testimony specifically touching upon the ownership was that of the State Trooper Jimmy Moore who investigated the accident. The witness Moore was allowed to testify by referring to his report, which report contained a notation to the effect that the bull in question was branded with a "T 11" brand and that the owner of that brand was the defendant Henry Kinney. Over defendant's objection, he testified as follows:
"Q. That night did you know whose bull or whose brand T 11 was?
A. No, sir, I did not.
Q. Now, who is in your report as the owner of the bull?
MR. THOMAS: I'm going to object to that, Your Honor. He said he doesn't know whose brand this is.
THE COURT: He can list what he wrote on his report. They testify as to their reports all the time.
A. I don't know whether someone told me at the scene that knew the brand T 11 or how I came about it, but I called the Sulphur Police Department and asked them to notify Mr. Kinney of the bull.
Q. Who did you show as the owner of the bull on your police report?
A. Mr. Henry Kinney.
Q. How did you get that Henry Kinney had T 11 bull?
A. I don't know if someonesomeone must have told me that it was his brand."
* * * * * *
"Q. Did you have any other evidence as to any other ownership of that bull?
A. No, sir, I did not."
* * * * * *
"Q. Trooper Moore, you've testified and I believe it's a correct statement for me to say that you don't know how you got that brand.
A. I don't remember who gave me the brand, no, sir. Someone gave me the brand that night at the accident..."
Trooper Moore further testified that he completed his report the following day from his notes and the information he received on the night of the accident and that after either seeing or being furnished the identifying brand, T 11, he placed it in his report. He presumed that he determined the ownership of the animal from a Brand Book in his possession. Concerning the inclusion of the brand T 11 and the ownership by Henry Kinney he further testified:
"Q. Did you have any doubts about putting it in your report?
A. No, sir. If I would've had any doubts, I would'nt have put it in there.
Q. You felt it was accurate or you would'nt have put it in the report, is that right?
A. Yes, sir."
* * * * * *
"Q. When you make an accident report, I assume then that you feel the *143 information is accurate that goes in the report; is that right?
A. I try to fill it out to the best of my ability.
Q. And if you hadn't been sure about that, you wouldn't have put the information in there; is that right?
A. No, sir.
Q. And it was in your accident report that you finished that next day; right?
A. Yes, sir."
* * * * * *
"Q. All right. Now, when you find the cow andWhen you find the cow, do you call the owner?
A. Yes, sir, we try to notify the owner.
Q. Who is responsible for moving one of those dead animals off the highway?
A. Most of the time if we can locate the owner the owners move them; if they don'tif they're not moved within a day or so, then we contact the Highway Department and they burn them."
Plaintiff also utilized the testimony of Willie J. Terpin, a member of the Vinton Volunteer Fire Department who had been called to the scene of the accident because of the possibility of a fire in the plaintiff's truck. He testified that upon arrival at the scene, after making certain there was no fire, he began to look, with the aid of a flashlight, for the animal which had been struck. He found it in the south ditch of the highway and stated that he found a brand on the bull. In this connection he testified as follows:
"Q. Did you find a brand on that bull?
A. Yes.
Q. Do you remember what that brand was?
A. No, sir.
Q. Did you then report that brand to Trooper Moore?
A. Well, I called out the brand on it. Now, whether it was him that I reported it to, I don't know. I really can't say and be truthful about it."
* * * * * *
"Q. Mr. Terpin, you don't remember what brand you saw?
A. No."
* * * * * *
"Q. You said you called out this brand, whatever brand you saw.
A. Right.
Q. Do you know specifically who you told about the brand?
A. No.
Q. Do you remember specifically whether Trooper Moore was standing right there
A. No, I don't know."
Q. There were several other people out there?
A. Oh, yes, definitely.
Q. Were there any other State Troopers?
A. Well again to be truthful, I really don't remember, but I seem to recallof course, I know our city police car was there and, of course, I know Trooper Moore's car was there, and it seems another State Police car was there and I believe another fire truck besides ours also.
* * * * * *
"Q. In fact, cattle is raised all over in that area, up and down both sides of Highway 90.
A. Right.

*144 Q. You didn't know that night you were out there whose bull it was that you saw?
A. No.
Q. And you don't know today whose bull it was that you saw?
A. No."
* * * * * *
"Q. Mr. Terpin, you did find a brand on that animal, didn't you?
A. Right.
Q. Does T 11 sound familiar to the brand you found?
A. No, I really don't know. Like I said, to be truthful about it, I don't remember what it could even possibly have been. I just don't remember. I mean, I know that I found a brand on it but what it was I just don't know."
It is evident from Trooper Moore's testimony at the trial that he had no independent recollection as to how he secured information concerning the brand "T 11". He did not recall seeing the brand and it was his thought that the brand was given to him by someone. He was sure however, that the information placed on his report was correct and that he would not have placed that information in his report unless he satisfied himself of the correctness thereof. Although the witness Terpin, at the trial, did not remember the identification of the brand he found, he did emphatically state that he found a brand and that he called it out.
Trooper Moore's testimony was properly allowed as a "past recollection recorded" which situation is one where a testifying witness is devoid of a present recollection and therefore desires to use a past recollection, ordinarily embodied in a memorandum of some kind. In such a case a witness testifies, not from any independent recollection, but from the written memorandum itself. Although the doctrine of past recollection recorded is one of common law derivation, (Wigmore on Evidence), Louisiana has recognized it. See Bullard v. Wilson, 5 Mart. (N.S.) 196; Auld v. Walton, 12 La.Ann. 129; State v. Smith, 144 La. 801, 81 So. 320. It seems a reasonable rule that whether or not testimony of this nature should be allowed rests in the sound discretion of the trial judge. Such testimony should be allowed only when the trier of fact satisfies himself that the memorandum or report was contemporaneous with the event concerning which the witness is testifying, and that the witness was sure of the correctness of the notations. Such testimony should be permitted with caution by a trial judge, otherwise it may lend itself readily to the bolstering of false or erroneous testimony. In this case, we conclude that the trial judge did not abuse his discretion in allowing Trooper Moore to testify by referring to his accident report as a past recollection recorded.
The bull was removed by two employees of the defendant the morning after the accident and taken to a slaughterhouse. There was testimony by defendant Kinney's son to the effect that he found a brucellosis ear tag on the animal on the night of the accident but that it was not preserved. This tag could have served as evidence to prove ownership. Defendant's son also testified that he viewed the hide of an animal at the slaughterhouse a couple of days after the accident, which hide had been pointed out to him as being the hide of the animal in question. He said there was no brand on the hide, however, no one from the slaughterhouse testified, and it is apparent that the trial judge was not satisfied that the slaughterhouse hide was in fact the hide of the culprit bull.
In view of all the evidence we find no manifest error in the conclusions of the trial judge that the bull in question was owned by defendant Kinney.
We believe however, that the trial judge erred in concluding that the defendant did not overcome the presumption of fault *145 in the premises. In this connection it is noteworthy that plaintiff offered no evidence to indicate an improper maintenance of Mr. Kinney's fences, nor to show any defects in said fences or gates, nor anything to indicate that the Brangus bull in question may have escaped from its confines or during any moving operations, because of negligence on the part of Kinney. On the other hand it was shown through the testimony of defendant Kinney and his son who worked with him, that the fences and gates were constantly maintained, checked regularly, both before the accident and after the accident, and that no evidence was found which would indicate that an animal could have gotten out of any of his pastures. It was further shown that the defendant Kinney had no cattle in the areas immediately adjacent to the highway in question and that to get to the highway any animal which may have escaped would have had to cross combinations of fences and cattle gaps, some of which were located on pastures belonging to others. It was also shown that in the moving operations by van, all cattle were accounted for and none were missing. Under these circumstances and by the facts testified to, all of which were uncontradicted, it cannot be said that Mr. Kinney's attention to his responsibilities in keeping his cattle within their confines was not that of a reasonably prudent individual.
The trial court's conclusion that the animal in question somehow got out or was overlooked is obviously based on speculation and is not supported by the evidence.
We therefore conclude, based on the requirements set forth under the provisions of LSA-R.S. 3:2803 and the jurisprudence thereunder that the defendant Kinney has successfully rebutted the presumption of fault imposed on him. Pitcher v. Audubon Insurance Co., La.App., 193 So.2d 833; Sims v. Ainsworth, La.App., 120 So.2d 371; Ansardi v. Potter, La.App., 71 So.2d 347; Fortenberry v. McCoy, supra; Brown v. Fulton Insurance Co., supra; Colomb v. McDonald, supra.
In view of our conclusions herein it is not necessary that we consider the other issues raised on this appeal.
For the above and foregoing reasons, the judgment of the district court is reversed and there will now be judgment in favor of defendant Henry Kinney and against the plaintiff Otis Primeaux, dismissing plaintiff's suit. Costs in this and in the trial court are assessed against plaintiff-appellee.
Reversed.