SAVOY, Judge.
This is a tort suit arising out of a collision involving an automobile and four horses. The accident occurred on Louisiana Highway 26 approximately one mile north of Lake Arthur, Louisiana, at or about 10:00 P.M., August 22, 1967. The car involved was a 1967 Plymouth VIP sedan, which belonged to Kiki Smith Motor Company, Inc. of Lake Arthur, Louisiana. On the occasion of the accident, this car was operated by Wallace Smith, president and major stockholder of Kiki Smith Motor Company, Inc. The four horses involved were two grown mares and their two colts. One mare with colt belonged to defendant, W. Y. Hundley, Jr., and the other mare with colt belonged to defendant, John Miller.
Plaintiffs are United States Fidelity and Guaranty Company, the collision insurer of the automobile involved, and Kiki Smith Motor Company, Inc., owner of the automobile. In their suit plaintiffs seek to recover for property damages occasioned to the automobile by the collision. Plaintiff, United States Fidelity and Guaranty Company, asks for $1,015.59, the cost of the repairs necessitated by the collision, less the $100.00 deductible provision under the policy. Plaintiff motor company asks for $100.00, the deductible under the collision policy; $500.00 depreciation to the automobile; and $400.00 for deprivation of use of the automobile while it was being repaired.
To plaintiffs’ petition each defendant filed a general denial, a reconventional demand, and a third-party petition by which each seeks recovery for damages occasioned by the death of the four horses, against Wallace Smith.
After a trial on the merits the district judge, in a memorandum opinion, found neither party at fault and dismissed all *478 claims. He did not assign any reasons for his ruling.
LSA-R.S. 3:2803 provides in part:
“No person owning livestock shall knowingly, willfully or negligently permit his livestock to go at large upon the following public highways of this state:
“Route “Section
******
“55. LA 26 * * * Lake Arthur to Elton * *
The law on this subject is well-settled in our jurisprudence. In McGee v. Planet Ins. Co., 216 So.2d 628 (La.App. 3 Cir. 1968), we said:
“ * * * Although the cattleowner in a stock-law area has the burden of proving his freedom from negligence when a car collided with his stock, Huval v. Burke, 160 So.2d 810 (La.App. 3 Cir. 1964); nevertheless, the motorist’s own negligence may contribute to the accident through his failure in reasonable lookout to observe the cattle standing on the road and to take proper evasive action. Abshire v. Hoffpauir, 169 So.2d 740, 741 (La.App. 3 Cir. 1964). * * *.”
In Bernard v. Hungerford, 157 So.2d 246 (La.App. 3 Cir. 1963), we held that under the provisions of LSA-R.S. 3:2803, the burden of proof is on the owner of the animal to exculpate himself from liability by proving he is free from negligence.
In Lung v. Hesser, 197 So.2d 399 (La.App. 2 Cir. 1967), the court said in connection with a vehicle-animal collision:
“The accident occurred on Louisiana Highway 175 at a point where the closed range stock law applies under the provisions of LSA-R.S. 3:2803. It is the well established jurisprudence of this State that a motorist traveling on such a highway has the right to presume it to be free from livestock and is under no duty to anticipate the presence of livestock on the highway.”
Wallace Smith was the only witness to the accident. He testified that a short time before the accident he had driven his wife to the Smith home situated north of Lake Arthur, Louisiana, off of Highway 26. He was on his way to the automobile agency located off the west side of Louisiana Highway 26 and south of the Smith home. Highway 26, at all points pertinent to this case, has two opposing traffic lanes, and it is asphalt surfaced. The asphalt portion of the highway had been widened a short time before the accident. The shoulders were generously wide and sloped into open ditches running parallel to each side of the highway.
In order to reach his destination, Wallace Smith was driving in a southerly direction at some 40 to 45 miles per hour in the west, being the right-hand, lane of traffic. It had been drizzling for at least an hour prior to the accident. The asphalt was wet and slick, and although the traffic was light, Wallace Smith had met and crossed one or two cars prior to the accident. Immediately before the accident, Mr. Smith saw an approaching northbound automobile, with headlamps burning. Both he and the approaching motorist changed the car headlamps to low beam. The approaching automobile met and crossed Smith’s automobile a few feet south of W. Y. Hundley’s home. As soon as the cars had crossed, Smith saw a group of horses running from the west shoulder of the highway into the southbound traffic lane of Louisiana Highway 26. Although the horses were generally grouped close, they were lined up more or less in tandem fashion. The horses entered upon the surfaced portion of the highway a few feet in front of Smith’s car and continued running in a southerly direction. The horses were all of a rather sombre color. As soon as the horses entered his traffic lane, immediately to the front of his moving automobile, Smith applied his brakes, veered to the left, but was unable to avoid colliding with them. He distinctly recalls
*479 four collisions in quick succession. After the last collision Smith’s car came to rest on the left side of the highway several feet south of the initial point of impact, and facing in a northerly direction. A mare and a colt belonging to defendant, John Miller, were still alive. They had crossed the highway to the east side and had headed hack north towards W. Y. Hundley, Jr.’s home. When first found, the mare belonging to defendant, Hundley, was dead in the west road ditch. The colt belonging to defendant, Hundley, was also dead and lying off the west side of the highway some 100 feet to the south of the mare. The mare was not found until the following morning; however, the dead colt was found soon after the accident.
Mr. W. Y. Hundley, Jr. testified that he could not account for the accident; that all of his fences were in good order; and his explanation for the horses being on the highway was that some person or persons probably were trying to steal the animals and left the gates open. He also testified that along with his horses he also kept the animals involved in the accident belonging to the other defendant, Miller.
There was considerable testimony about the general layout of the Hundley farm, together with various pastures and gates; but, this evidence did not help in determining the cause of the horses escaping to the highway. The record reflects that the horses involved in the accident were quarter horses and were highly spirited animals.
Messrs. Bradley Hardy and Luther Hardy testified on behalf of defendants. They had delivered a combine to the Hundley farm and from a casual inspection they found the fence in good order. Both were related to Hundley. This Court is of the opinion that the witnesses were truthful, but this testimony was self-serving.
Plaintiffs introduced in evidence photos marked P — 1, P-2 and P — 3. An examination of these photos convinces this Court that the fences were not in very good repair.
We are of the opinion that under the law and facts of the instant case, plaintiffs have made out a prima facie case, and that defendants did not rebut the strong presumption imposed on them by LSA-R.S. 3:2803.
The damage to the vehicle was stipulated to\ be the sum of $1,015.59. Plaintiff, Kiki Smith Motor Company, Inc., had a $100.00 deductible clause in its policy with United States Fidelity and Guaranty Company. Kiki also sued for an additional sum of $500.00 for depreciation to the car, and $400.00 for deprivation of use of the car; however, these items were not proven and are not allowed.
For the reasons assigned judgment is rendered in favor of plaintiff, United States Fidelity and Guaranty Company, in the sum of $1,015.59; and in favor of plaintiff, Kiki Smith Motor Company, Inc., in the sum of $100.00, against defendants, W. Y. Hundley, Jr. and John Miller, in solido, with interest at the rate of 5% per annum from judicial demand until paid and for costs of court in both courts.
Reversed and rendered.