233 So.2d 320 (1970)
Mrs. Ira FORTENBERRY et al.
v.
Edward E. McCOY et al.
No. 7899.
Court of Appeal of Louisiana, First Circuit.
March 9, 1970.
Rehearing Denied April 13, 1970.
Writ Refused June 8, 1970.
*321 Joseph A. Gladney, Baton Rouge, for plaintiffs-appellants.
Michael S. Ingram, Baton Rouge, for defendant-appellant, E. D. Robinson.
Glusman, Carruth & Moore, by William R. Carruth, Jr., Baton Rouge, for defendants-appellees, Edward E. McCoy and Employers Liability Assur. Corp., Ltd.
Before LANDRY, SARTAIN and ELLIS, JJ.
LANDRY, Judge.
The instant matter involves three consolidated actions arising from a collision between a black Angus bull owned by defendant E. D. Robinson and an automobile owned and being driven by defendant Edward E. McCoy. Mrs. Ira A. Fortenberry, a guest passenger in the McCoy vehicle, and her husband, Cromer Fortenberry, seek damages from Robinson, McCoy, and the latter's insurer, Employers Liability Assurance Corporation, Ltd. (Employers), for personal injuries and related expenses sustained and incurred by and on behalf of Mrs. Fortenberry. Employers sued Robinson under subrogation, for medical payments made to McCoy's passenger, Mrs. Fortenberry, and collision damage to McCoy's automobile. Lois E. Butler McCoy, guest passenger in the vehicle being driven by her husband, Edward E. McCoy, sued Robinson and her husband's insurer, Employers, to recover damages for personal injuries.
The trial court found defendant Robinson solely at fault in negligently permitting his animal to roam at large on a highway where loose stock is prohibited by law. Judgment was rendered below in favor of: (1) Mr. and Mrs. Fortenberry against Robinson in the sum of $3,000.00, plus special damages aggregating $969.35; (2) Employers against Robinson for $1,146.77, being $500.00 medical payments to Mrs. Fortenberry and $646.77 collision damage to McCoy, and (3) Mrs. McCoy against Robinson in the amount of $150.00 for personal injuries.
Robinson has appealed claiming the lower court erred in (1) finding him responsible for the accident; (2) exonerating McCoy from liability, and (3) awarding Employers damages for medical expense and property loss without proof of Employers' subrogatory *322 rights. Mrs. Fortenberry has also appealed maintaining the trial court erred in rejecting her demands against McCoy. She also asks for an increase in damages. We affirm the judgment of the lower court which exonerated defendant McCoy. We reverse the judgment of the court below which found defendant Robinson negligent.
The accident occurred at approximately 8:00 P.M., July 9, 1966, on Louisiana Highway 16, about two miles south of Watson, in Livingston Parish. At the scene, Highway 16 is a two-lane, blacktopped highway which runs in a northerly-southerly direction. An establishment known as Jones Grocery is situated on the east side of the highway near the point of impact. Lights from the establishment partially illuminated the highway in the immediate vicinity of the building.
Defendant McCoy, returning from Denham Springs where he had picked up Mrs. Fortenberry in response to a telephone call from her, was proceeding northerly toward Watson. Mrs. Fortenberry occupied the right side of the front seat of the McCoy car. Mrs. McCoy was sitting in between her husband and Mrs. Fortenberry. Mr. McCoy was traveling at a speed of 40 to 50 miles per hour in his proper lane of travel. The animal was walking northerly in the center of the northbound lane. The automobile struck the bull squarely in the rear. The impact occurred in a dark area on the highway a short distance north of the Jones Store premises.
Robinson is charged with negligently permitting the animal to roam at large on a highway where loose stock is made illegal pursuant to LSA-R.S. 3:2803. McCoy's negligence reputedly consists of his traveling at an excessive speed, failing to maintain a proper lookout, and failing to see the animal in time to stop.
Donald Ott was proceeding to the Jones Grocery shortly before the accident. He observed the bull crossing the highway within the area illuminated by the lights of the store. After stopping and flagging down a southbound motorist proceeding toward Denham Springs, he chased the animal off the highway. The animal circled behind the store, reentered the highway and proceeded northerly toward Watson, in the center of the northbound lane. At this juncture Ott noted McCoy's approach. By waving his arms and yelling, Ott attempted to alert McCoy to the animal's presence on the highway. Ott estimated McCoy's speed at 50 to 60 miles per hour. Immediately before the impact, the bull was beyond the area lighted by the store but with the aid of the automobile lights, he could see the animal because he knew it was there. Although he was looking toward the point of impact when the collision occurred, he did not observe McCoy's brake lights come on. He did, however, hear the noise of applied brakes before the impact. Ott also noted a vehicle approaching the McCoy car from the opposite direction. He estimated the other vehicle to be 500 to 1,000 yards distant at or about the moment of impact.
Jack Ott, an acquaintance of Robinson, testified he had unsuccessfully attempted to pen the loose animal before the accident. While resting from his labor in this regard, he was advised by two youths that the animal was impounded. He had never before observed the animal at large. From personal observation and knowledge, he considered Robinson's fences adequate.
Alvin Ott, another acquaintance of Robinson, had observed the animal at large. When the accident occurred, he was in Jones' Grocery attempting to telephone the local enforcement officer to have the animal corralled. Ott considered Robinson's fences to be normal farm enclosures. Several months prior to the accident, he observed some of Robinson's stock loose. At about this same time, he saw the black Angus bull in Robinson's front yard.
Robert H. Harrison, a neighbor of Robinson, testified that Robinson's fences compared favorably with those of other landowners in the general area.
*323 Defendant McCoy testified he was proceeding at a speed of 45-50 miles per hour when he observed Donald Ott waving at him from the roadside in front of Jones' Store. McCoy surmised that Ott wanted to discuss a coon hunt arranged for that evening. Being in somewhat of a rush to join his hunting companions who were at his home awaiting his arrival, McCoy did not stop. He did not hear Mr. Ott yell out as the windows of the automobile were closed because the air conditioner was in operation. Just after passing Ott, McCoy encountered an approaching vehicle whose lights momentarily obscured his vision. Immediately after passing the oncoming car, McCoy observed the rear end of the bull in the center of his lane of travel approximately 75 feet ahead. He immediately applied his brakes full force but could not avoid striking the animal.
Mrs. McCoy testified that she observed Ott waving to her husband from the roadside and directed Mr. McCoy's attention to Ott's presence. She noted that just before the collision, a vehicle was approaching from the opposite direction which caused Mr. McCoy to switch his lights to dim. She was not watching the highway at the time of the collision and did not see the bull in the road ahead.
The accident was investigated by Sergeant Bridges, State Trooper, who confirmed in substance the events related by Mr. McCoy. His report did not, however, reflect McCoy's mention of an oncoming vehicle.
Mrs. Fortenberry's testimony is essentially to the effect that she was not paying attention to the road ahead and knew little of what occurred.
We will first consider the alleged negligence of McCoy. We find no evidence to establish the charge that McCoy was exceeding the legal speed limit of 60 miles per hour.
It is well established that the driver of a vehicle must constantly maintain a vigilant lookout ahead. Vincent v. Superior Iron Works and Supply Company, La.App., 170 So.2d 184. A person is negligent for failing to observe what he could or should have seen. Hanford v. Jan C. Uiterwyk Company, Inc., La.App., 214 So. 2d 236. It is of some significance that the animal involved is shown to be jet black and that he was not crossing the road but walking in the same direction at which McCoy was driving. Our jurisprudence establishes that the duty of a motorist to anticipate the presence of stock on a stock free highway is not as great as it is when traveling upon a road on which stock may lawfully roam at large. Parker v. Young, La.App., 122 So.2d 699; Pugh v. Travelers Indemnity Company, La.App., 166 So.2d 373, and Brignac v. Pan American Petroleum Corporation, La.App., 224 So.2d 84. Counsel for plaintiffs cite numerous cases holding that a motorist is negligent for striking objects in the road and failing to see objects within the range of his headlights. Also cited are cases holding that a driver temporarily blinded by the lights of an oncoming vehicle, or adverse weather or atmospheric conditions, must reduce his speed appropriately. We recognize the rule announced in such cases but they are not necessarily decisive of the case at hand. This case, involving an animal at large on a highway where loose stock is prohibited by law, is more properly within the ambit of Parker, Pugh and Brignac cases, above. We find that McCoy's speed was lawful and reasonable under the circumstances. It was commensurate with hazards which he could legally be required to reasonably anticipate. That he was alert is attested by the fact that notwithstanding the circumstances, including the position of the animal on the highway, he detected its presence and attempted to avoid an accident. He is not required to foresee the presence of such a dark animal on the highway at night. We concur in the trial court finding that he was free of fault.
*324 Robinson's alleged liability rests upon his purported violation of LSA-R.S. 3:2803, which provides:
"No person owning live-stock shall knowingly, willfully, or negligently permit his live-stock to go at large upon the following highways of this state."
Highway 16 is one such designated highway. The jurisprudence interpreting the applicable statute places the burden on the stock owner of proving himself free from negligence by showing that he has taken every precaution expected of a reasonable, prudent individual to prevent his livestock from leaving their confines and roaming at large. Brown v. Fulton Insurance Company, La.App., 211 So.2d 412; Pitcher v. Audubon Insurance Company, La.App., 193 So.2d 833; Abshire v. Hoffpauir, La.App., 169 So.2d 740. Stated otherwise, the burden is incumbent upon the owner to establish his freedom from fault where his stock escapes from his premises and roams upon a public highway.
We preface our consideration of this issue by noting that in his reasons for judgment, the trial court was considerably impressed with Robinson's demeanor and candor. The trial judge particularly noted that Robinson appeared to be a man of substance and unquestioned veracity.
Defendant Robinson's testimony is that he had been away from home on vacation at his camp for four or five days before the accident happened. He received news of the accident at his camp and returned home late on the night the accident occurred. That same night he checked his gates and found that one gate, made of aluminum and measuring four by twelve feet, had been badly bent and its latch broken. He surmised the animal escaped by breaking down the gate which was found battered. He stated his fences consisted of net wire at the bottom topped by three strands of barbed wire, which was more or less standard construction for the vicinity in which he resided. He explained that black Angus cattle have short legs and are unlikely to jump fences. When such animals escape, they generally do so by placing their heads under the wire strands and raising the wire. He acknowledged he had previously owned Brahmas cattle which were long legged and prone to jump fences. Because of this proclivity on the part of Brahmas, he had disposed of all such stock some time before the Angus bull escaped. Robinson also related that Angus bulls are extremely strong and during the mating season will go through almost any barrier to mate with cows in adjoining pastures. This particular bull, however, was very docile and had never before jumped a fence or broken through a gate. Following the accident, he checked his fences and found everything in order. It was his conclusion the bull escaped by breaking down the gate. In this respect, it appears the gate was of the type furnished by the State Department of Highways to property owners whose fences have to be restored due to highway construction projects. It is also shown the gate was of a type in general use by farmers and cattlemen in the vicinity. He also related that in his absence he relied on his brother Arnold and his neighbor, Billy Ott, to check his cattle. Robinson further stated it was the custom and habit of his other neighbors to watch his premises in his absence. He maintained he had checked his premises before leaving and found everything secure.
Alvin Ott, neighbor, and Albert S. Young, former tenant of Robinson, testified in effect that some months prior to the accident, they had observed Robinson's cattle at large. They did not indicate, however, whether the cattle were Brahmas or Angus. Mr. Young also testified that in his opinion, Robinson's fences were generally poor. Young had observed cattle jumping Robinson's fences some time before the accident. He never knew the black Angus bull to jump a fence, neither had he seen this particular animal running at large at any time prior to the accident.
*325 In addition to defendant Robinson and his wife, other credible witnesses, namely, Alvin Ott and Robert Harrison, testified in substance that Robinson's fences were adequate and maintained in good repair.
We believe defendant Robinson has discharged the burden of proving his freedom from fault under the circumstances. His veracity was unquestioned by the trial court. His unimpeached testimony established with reasonable certainty that the bull did not egress through a defective fence but unexpectedly battered down a gate Robinson had reason to believe sufficient to restrain the animal under ordinary circumstances. Assuming Robinson's fences were found defective in some respect, the outcome would not be affected since we conclude the animal egressed through a gate which his owner reasonably believed to be secure.
We find the instant case strikingly analogous to the circumstances noted in Sims v. Ainsworth, La.App., 120 So.2d 371, wherein the owner of a mule was exonerated when it appeared his fences were adequate but that an animal, showing no prior propensity of fence breaking, egressed by virtually destroying a gap adequate to restrain the animal under normal circumstances. Here the evidence discloses the animal in question was extremely docile and easily managed by his owner. The bull had never before broken a fence, jumped a barrier or broken down a gate.
It is inferred that Robinson was negligent in leaving his stock unattended during his four or five day absence. He testified unequivocally that before leaving, he requested his brother Arnold and neighbor, Billy Ott, to look after his cattle during his absence. That his neighbors did pay some attention to his place while he was away is attested by the fact that at least two acquaintances, Donald and Jack Ott, were attempting to pen the animal before the accident occurred. It would be sheer speculation to conclude that had Robinson not been absent from his premises, he could have prevented the animal's escape. We find no negligence on Robinson's part in any respect.
It is ordered, adjudged and decreed the judgment of the trial court is affirmed insofar as it exonerated defendant Edward E. McCoy of liability herein.
It is further ordered, adjudged and decreed that the judgments in favor of plaintiffs, Lois E. Butler McCoy, Mrs. Ira A. Fortenberry, Cromer Fortenberry and Employers Liability Assurance Corporation, Ltd. against defendant E. D. Robinson, be and the same are hereby reversed and set aside and said plaintiffs' suits dismissed. All costs of these proceedings, both on trial and appeal, to be paid equally by plaintiffs, Lois E. Butler McCoy, Mrs. Ira A. Fortenberry, Cromer Fortenberry and Employers Liability Assurance Corporation, Ltd.
Affirmed in part, reversed in part and rendered.