LANDRY, Judge.
Plaintiff appeals the judgment of the lower court dismissing his demand for damages for injuries sustained to his left hand on November 15, 1967. The injury producing accident occurred while appellant was attempting to oil an antique sawmill engine which had been restored and was being operated for the first time by its owner, Saban Joseph Gianelloni, insured of defendant, Louisiana Fire Insurance Company. We affirm the judgment of the trial court.
The facts are virtually undisputed. Gi-anelloni, a Mechanical Engineer, had repaired and restored an ancient sawmill engine located on his plantation situated below Baton Rouge on the River Road, East Baton Rouge Parish. The engine, six feet in height, consisted of two tapered, stationary lattice work sides, somewhat resembling A frames, made of heavy cast iron and joined to a thick, heavy cast iron base. The sides consisted of three flat “legs” joined together by large metal bars inserted through openings in flanges or ears situated approximately two feet from the *290 apex on each side. The sides provide support for a “rocker arm” or “walking beam” which was in turn affixed to cross head slides. The slides fit into slots or grooves on the inner surface of the supporting sides, which grooves constituted guides in which the cross head slides moved up and down when the machine was in operation. A bar connected the rocker arm to a large flywheel on one side of the machine assembly. The circular movement- of- the flywheel caused the rocker arm to move up and down forcing the crosshead slides to move upward and downward in the inside grooves of the latticed sides. Although the engine was designed for steam operation, Gianelloni provided power by means of an air compressor because he did not wish to rig up a boiler. The entire assembly was placed on six drums measuring thirty-three inches in height. To prevent the drums from sinking into the ground due to the weight of the ponderous device, planks three inches thick and eight inches wide were first placed on the ground. Similar planking was used on top of the drums and the engine rested on the foundation thus constructed. The top of the engine was therefore 9 feet, 3 inches above the ground. Gianelloni mounted the device in this fashion to avoid having to dig a hole in the ground to afford room for the large flywheel to turn when the machine operated. Prior to plaintiff’s appearance on the scene, Gianelloni had not run the engine under power. He had, however, turned the flywheel manually to determine that the moving parts would work.
It is conceded that plaintiff was Gianel-loni’s invitee. Plaintiff arrived at Gianel-loni’s place for the purpose of buying some hay just as Gianelloni was preparing to start the compressor to run the engine under power for the first time. Upon plaintiff inquiring about hay, Gianelloni replied that he was just about to start the engine, but that if plaintiff wanted the hay right away, the engine could wait. Plaintiff replied that he was in no hurry, and would like to see the engine run. Gianelloni then directed an employee to a nearby barn to obtain an “elbow” which Gianelloni wished to use to direct the compressor exhaust toward the ground. After attaching the elbow, Gianelloni started the compressor, opened a control valve and started the engine very slowly.
Plaintiff, a carpenter by trade, was 54 years old when the accident happened. He is six feet, seven inches tall. An accident, which maimed plaintiff’s right hand in 1959, necessitated his early retirement in 1961. He has limited vision in his right eye due to a childhood accident. As plaintiff explained, he sees “a kind of blank” when looking directly at an object with his right eye, but if he turns his head one way or the other, he has some vision out of his right eye. Plaintiff had previously purchased hay from Gianelloni.
Plaintiff testified that when the engine started, it began squealing up on top, whereupon plaintiff remarked to defendant “sounds like you need oil up there.” Defendant continued to watch the engine, and when it began to squeal louder, defendant told plaintiff “Well, go ahead and put some oil on it,” and added “There’s some oil on the foundation.” Plaintiff then picked up a nearby oil can with his right hand and looked for a place to climb on. He placed his foot on one of the barrels, reached up with his left hand, grasped the side frame to pull himself up, and instantly, the cross head slide came down and mashed his hand. Plaintiff immediately stepped down. Plaintiff stated he could not see the cross head slide moving up and down before the accident because it was shielded from view by the flat sides of the framework. He also stated that before grasping the frame, he had looked at the lattice work side of the device and noted it was stationary. On this basis, he could see nothing which posed a threat to his safety.
Defendant Gianelloni testified that the compressor was quite noisy when operated, but that he did not hear the engine squeaking. He declared that plaintiff stated “There is a bearing squealing; do you want me to oil it?” Defendant stated *291 that he answered “No, leave it alone; it will be all right” in a loud or shouting tone because he wanted to be sure plaintiff heard him above the engine noise. Within a few seconds, he reflected that the loudness of his reply may have offended plaintiff. Defendant stated he then told plaintiff to go ahead and oil the engine if plaintiff wanted to. According to defendant, plaintiff then walked around to the opposite side of the engine. Approximately one-half minute later, plaintiff came around the engine and said “Call an ambulance; I hurt my hand bad.” Defendant then proceeded to administer to plaintiff and summoned an ambulance. Defendant conceded that he paid little, if any, attention to what plaintiff was doing prior to the accident because he, defendant, was enthralled in watching such an antique machine in operation.
The trial court deemed it unnecessary to consider Gianelloni’s alleged negligence because, in any event, plaintiff was guilty of contributory negligence which barred plaintiff’s recovery. More particularly, the lower court found that the danger posed by the engine was plainly visible and that plantiff did nothing more than cast a casual glance at the engine before grasping a part of the machine to raise himself onto the platform on which the device was mounted. We agree with these conclusions.
Photographs of the engine were introduced in evidence. They plainly show that all movable parts of the machine were visible to a reasonably prudent observer. Moreover, plaintiff’s rather unusual height afforded him a better than ordinary opportunity to view the contraption while standing on the ground beside it. Further, it appears that plaintiff observed the machine actually in operation before taking hold thereof. We are convinced that plaintiff’s limited vision was in some measure responsible for his failure to note that the downward stroke of the cross head slides would extend to the point where he grasped the engine frame. Plaintiff was aware of his defective vision and defendant was not. Plaintiff’s awareness of this deficiency should have prompted a closer examination of the engine.
It is well established that one is deemed to see that which a reasonably prudent observer could have seen or should have seen under the same or similar circumstances. Fortenberry v. McCoy, La.App., 233 So.2d 320.
In this instance, the engine was in the open. No portion thereof was hidden from view. It is undisputed that plaintiff was not familiar with such a device. Under the circumstances, plaintiff’s attempt to climb on the engine while it was running, without familiarizing himself thoroughly with its operation, amounted to negligence constituting a proximate cause of the accident.
The judgment of the trial court is affirmed; all costs of these proceedings to be paid by plaintiff.
Affirmed.