277 So.2d 163 (1973)
Albert Stansifer ROSS, Plaintiff-Appellant,
v.
Carlos Del VALLE et al., Defendants-Appellees.
No. 4166.
Court of Appeal of Louisiana, Third Circuit.
April 25, 1973.
Rehearing Denied May 24, 1973.
Writ Refused June 28, 1973.
*164 Goode & Goode, by J. Philip Goode, Shreveport, for plaintiff-appellant.
Gist, Methvin & Trimble, by Howard B. Gist, Jr., Alexandria, for defendant-appellee.
Before CULPEPPER, MILLER and DOMENGEAUX, JJ.
MILLER, Judge.
Plaintiff Albert Stansifer Ross appeals the trial court holding that defendants Carlos *165 Del Valle and Valle Farms, Inc. exculpated themselves from negligence although they admitted that their Santa Gertrudis cow was struck by Ross's automobile on Louisiana Highway 1. We reverse and award damages.
The accident occurred about two miles south of Cloutierville in Natchitoches Parish at approximately 9:30 p.m. on Saturday, April 3, 1971. Ross was driving north at a speed of 60 mph. Immediately after meeting three southbound cars and as he was meeting the fourth southbound car, plaintiff struck defendants' 750 pound red cow which was standing in the northbound traffic lane. Ownership of the cow and its presence on the highway were admitted by defendants, as was the question of coverage by defendants' insurer U. S. Fidelity & Guaranty Company.
Defendants maintained some 1400 head of cattle on their 1800 acre cattle ranch which fronts about one mile along Highway 1. The traffic count on Highway 1 at this point is approximately 10,000 vehicles per day.
No one knows how the cow escaped. Defendant and two employees testified that they checked the fence after the accident and found no open gates, loose wires, fences down or an indication as to where the cow had escaped. However, it was admitted that the fence was not escape proof and that cows do escape; that this Santa Gertrudis cow was part Brahma and these cows are hard to keep fenced; that one of their cows escaped about one year before and was involved in an accident on Highway 1; and that on the previous occasion there was no explanation as to how the cow escaped.
Because of the earlier accident, defendants added a fifth barbed wire to the four existing strands around most of the pastures. However, the particular pasture in which this cow was grazing was adjacent to the highway and a fifth strand of wire was not added to a portion of this fence because the crew did not want to go through the mud and snakes in that area.
The fences generally consisted of either four or five strands of barbed wire on posts spaced six feet apart. However, the evidence shows that the strands were one foot apart rather than nine inches as recommended by certain authorities. Pictures of the fence taken one year after the accident were admitted in evidence because defendant testified that the pictures showed his fences in the same condition existing at the time of the accident. These pictures showed wires that were not taunt on posts in an area fenced by only four wires and located adjacent to Highway 1.
Defendants' Santa Gertrudis cow that was known to be difficult to fence was confined by a loose four wire fence adjacent to a heavily traveled Stock Law Highway (LSA-R.S. 3:2803). Defendants knew of a prior accident caused by one of their cows escaping from a similar enclosure and failed to improve the fence in the area where this cow was pastured. Despite the testimony of defendant and his employees as to the good contition of the fence, the fence was actually not in good shape. Defendants failed to sustain their statutory burden of proving their freedom from negligence. U.S.F. & G. v. Hundley, 225 So.2d 477 (La.App. 3 Cir. 1969); Huval v. Burke, 160 So.2d 810 (La.App. 3 Cir. 1964); and Colomb v. McDonald, 131 So. 2d 84 (La.App. 3 Cir. 1961).
Defendants argue that Ross was contributorily negligent in failing to see the cow before hitting it; that Ross is held to the duty of seeing that which he should have seen and must drive so that he can stop within the range of his headlights. We accept these rules but the exception is applicable here.
One of the oncoming drivers returned to the scene of the accident to help Ross and told how he had barely missed this cow and that there was no way for Ross to miss the animal. The motorist is *166 not charged with the duty of guarding against striking an unexpected or unusual obstruction which he has no reason to anticipate he would encounter on the highway. Carona v. Southern Farm Bureau Casualty Insurance Company, 164 So.2d 138 (La.App. 1 Cir. 1964). A night driver on a stock-law highway is not held to the duty of slowing each time he meets oncoming headlights to be prepared to make an emergency stop in the event an unlighted, dark colored animal is blocking his lane of traffic.

QUANTUM
Ross's 1965 Oldsmobile could have been repaired for $1159.22, but he settled with his insurer on the basis of a total value of $775.00. Ross is entitled to the $50 deductible portion of the loss for damage to his car.
Medical expenses of $719.84 were incurred for one day's hospitalization, medications, numerous x-ray examinations, an electromyogram, neck braces, home traction, physical therapy and doctor's fees. This amount is also awarded. The physicians agree that Ross is likely to continue to suffer pain as a result of this accident and an award of $250 is made for future medical expenses related to this accident.
When the accident occurred, Ross was 56 years old and had been a petroleum engineer since 1937. Since 1946 he has been an independent in the oil business and a consulting petroleum engineer. He and his brother were in the business of putting deals together to drill oil and gas wells. They would interest investors, take leases, let bids for contract drilling, supervise the drilling and completion operations, then operate the properties. At the time of the accident they were operating some 55 to 60 wells in south Texas, Louisiana and Arkansas. They drilled an average of 12 to 15 wells each year. Ross performed all the outside work related to drilling and operations while his brother performed the office work.
Immediately following the accident, Ross was unable to move. He was taken by ambulance to Natchitoches where he was examined and his general condition improved to the extent that the physician approved his family's request that Ross be taken by automobile to Shreveport for further attention.
Dr. Wallace H. Brown hospitalized Ross in Schumpert Hospital for one day and ordered extensive x-rays. Most symptoms were in the occipital area with marked narrowing of certain cervical interspaces. Dr. Brown referred Ross to orthopedic surgeon Dr. D. F. Overdyke, Jr. Dr. Overdyke found numbness in both of Ross's arms resulting from the bruising of nerve roots. Ross had advanced osteoarthritic changes between C-4 and C-5, and between C-5 and C-6 which were aggravated by the accident.
Dr. Overdyke saw plaintiff on April 4, 13, 20, 30, July 6, 1971 and January 21, 1972. Ross was seen on May 6, 1971 by Dr. Edward M. Kruser of Baylor University Medical Center for an electromyogram on Dr. Overdyke's referral. Ross received physical therapy treatments at Dr. Overdyke's office on May 14, 27, 28, June 3, 4, 7, 9, 11 and 14, 1971.
Dr. Overdyke diagnosed a sprain superimposed on a very arthritic neck and first prescribed pain medication, bed rest and a soft cervical collar. This was changed to a four point neck brace on April 13 and cortisone was injected at the right articular joint. Ross remained in bed for about 7 to 10 days. All physicians agreed that Ross should be treated conservatively. He undertook physical therapy, traction and limited his activity. He returned to limited work in about ten days and worked up from half-duty to full duty in about four months. For seven weeks his wife did the necessary driving. Through January 21st, Dr. Overdyke observed that plaintiff suffered pain, misery, irritation and frustration, but concluded that as to the neck injury, plaintiff had recovered to the extent *167 that he can do 90% of what a man his age could do. This was accounted for because of plaintiff's excellent physical condition prior to the accident.
On January 21st, Dr. Overdyke discovered that Ross had a torn posterior horn of the medial meniscus of his left knee. This injury was related to the accident because it showed up only when Ross was able to undertake some physical activity. Five percent disability was assigned to this injury.
Before the accident plaintiff was an active snow and water skier, diver, bowler, golfer and tennis player. He has had to limit these activities (which Dr. Overdyke opined he might have continued for another 10 years) because plaintiff is now subject to severe pain, or serious, permanent and crippling injuries to his neck.
Defendants' expert orthopedic surgeon, Dr. T. E. Banks of Alexandria, opined that Ross ". . . will probably continue to have some intermittent discomfort for the remainder of his life due to the pre-existing arthritis with superimposed trauma, but this will not grossly prevent him from pursuing within 80% of normal activity for a man of his age."
At trial Ross testified that he still had difficulty driving, that he couldn't sleep as he did before, and that he could no longer engage in strenuous physical activity.
Because of Ross's disability resulting from this accident, his Company was unable to accept bids for drilling two wells. When Ross was able to return to work, his share of the additional cost related to this drilling was $1,550. He is entitled to recover this amount.
For pain, suffering and disability related to this accident, we award $17,500 to plaintiff Ross. We reject this claim for loss of future earnings because the proof is not sufficient to substantiate this claim.
Plaintiff Albert Stansifer Ross is awarded judgment in the sum of $20,069.84 against defendants Carlos Del Valle, Valle Farms, Inc., and U. S. Fidelity & Guaranty Company, together with legal interest thereon from date of judicial demand until paid. All costs of court both at trial and on appeal are assessed to defendants.
Reversed and rendered.
DOMENGEAUX, J., concurs and assigns reasons.
DOMENGEAUX, Judge (concurring).
I agree that the plaintiff is free of negligence and that he is entitled to the award granted him. I also agree that the defendants have failed to sustain their statutory burden of proving their freedom from negligence as required under the provisions of LSA-R.S. 3:2803. My reasons for the latter conclusion, however, differ from those set out in the main opinion.
Defendant Carlos Del Ville, owned some 1800 acres of land adjacent to the highway on which this accident occurred. The land had been leased by him to defendant, Valle Farms, Inc., for the purpose of operating a cattle ranch. Mr. Del Valle and his wife own all stock in Valle Farms, Inc., and he is the President and General Manager of the corporation, which is engaged exclusively in the cattle raising business. The 1800 acres front approximately 3/4 of a mile on the highway in question and are completely fenced in. They are divided into nine pastures which are also fenced in. Four of the pastures front on the highway. The fences are approximately five feet high, and the fence along the highway has five strands of standard gauge barbed wire with the remaining fences containing four strands of such barbed wire. The strands are approximately one foot apart, and the fence posts are creosoted, No. 2 variety with a minimum four inch diameter. They actually are 6½ feet long and buried to a depth of 1½ feet. The posts are on 6 foot centers. The barbed wire is stapled with ¾ inch staples. Cross ties used for braces at strategic *168 places such as the fence corners. The gates are mostly made of wood.
Mr. Del Valle, who had been in the cattle business all of his life began the cattle operation on the site in question in 1961. The fence in question was 5 or 6 years old at the time of the accident, it having completely replaced the old fence surrounding the property in 1961. There are two cattle guards on a gravel road within the 1800 acre enclosure, and the gates fronting the highway are kept closed by a ¾ inch chain. The cattle operation is an extensive one and the corporation engages in breeding programs requiring that certain cattle be kept separated in the various pastures within the 1800 acre enclosure. The corporation had experienced, some time before the accident in question, the escape of one of its cows by means unknown, and as a result thereof the fifth strand of wire was placed on the front fence as an extra precaution. At the time of the accident the corporation had some 800 cows, mostly with calves, plus approximately 40 bulls, aggregating some 1400 cattle.
The evidence shows that Mr. Del Valle is an active, participating, working general manager of the overall ranch operation. Except for vacations and personal trips he works at the ranch every day. Carson B. Lodridge lives on the ranch and is a full time employee, as is Eldren Carnahan, who works daily as a cowboy. Their combined testimony shows that they ride the ranch daily either on horseback or in a mechanized vehicle and that while doing so they observe the fences carefully. The fences were inspected on the day of the accident. They stated unequivocally that the fences on the ranch were in excellent shape at the time of the accident and that subsequent to the accident an inspection was made and no place was found where the cow in question could have escaped. It was also shown that the cow in question was in a designated pasture on the day of the accident and that a particular examination of the fences of this pasture after the accident showed no holes or defects therein through which the cow might have escaped. The cow in question was gentle. The evidence shows convincingly that the fences were constantly kept under keen surveillance and mended as the occasion required. There were no loose strands of wire nor broken or open gates on the day of the accident. In their regular and consistent inspections of all fences, the three men carry hammers and staples in a saddle bag for use as needed in fence mending.
In addition to the testimony adduced it was stipulated at the trial that if Harold O. Lloyd, County Agent for Natchitoches Parish were called as a witness for the defendants he would testify that the defendant, Mr. Del Valle of Valle Farms, Inc., in Mr. Lloyd's opinion had better than average pasture fences in Natchitoches Parish, and had so had since Del Valle purchased the farm several years before. There was a further joint stipulation that the owners of the pastures adjoining and in the vicinity of the defendant farm, if called as witnesses, would testify that the defendant's fences are as good or better than theirs.
Although defendant Del Valle very candidly admitted that his fences were not escape-proof, the law does not require that in order for a cattle owner to absolve himself from liability he must maintain escape-proof fences; and although it was testified that Santa Gertrudis cattle, having a Brahma strain, are more difficult to keep fenced, nevertheless, it was testified that the cow in question was a gentle one.
Admittedly a portion of the fence fronting the highway in a low area was not implemented with a fifth strand of wire; however, there was no showing in the record that the four strands at that site were not adequate under normal standards, and in fact there was no showing that the strandards of the cattle raising business require five strands of wire. In any event there was no showing that the cow in question escaped from that section of the fence. Additionally, Mr. Del Valle testified *169 that a four strand fence is a standard fence, and this was uncontradicted.
The majority opinion suggests that certain authorities recommend that the barbed wire strands be spaced at 9 inch intervals. In that regard there was a suggestion by plaintiff's attorney while cross-examining Mr. Del Valle that the American Hereford Association publications recommend 9 inch spacing for cattle fences. Mr. Del Valle indicated that he was not familiar with any such publication. Under these circumstances there was certainly no proof by testimony or other evidence that the barbed wire strands must be spaced at 9 inch intervals.
The pictures of a portion of the fence referred to in the majority opinion were taken approximately one year after the accident in question, and although Mr. Del Valle testified that his fences were in the same condition on the date of the accident as they were on the date of the taking of the pictures, he specifically testified subsequently that the pictures taken of that particular portion of the fence did not show its condition at the time of the accident. He further testified that at the time of the taking of the pictures he was not keeping cattle in the particular enclosure represented in the pictures.
From the above it is obvious that the trial judge was impressed with the good condition of all fences and with the thorough method in which Mr. Del Valle and the two employees kept constant surveillance and maintenance of them.
Notwithstanding, however, even though it may be said that the defendant Mr. Del Valle has taken every precaution expected of a reasonably prudent individual to prevent his livestock from leaving their confines and roaming at large, the defendants have failed, as required, to carry the burden of showing when, where, and how the animal escaped from its enclosure. It was readily admitted by defendants that they had no idea as to how the cow in question managed to get outside of the ranch enclosure and onto the highway.
Under LSA-R.S. 3:2803 and the jurisprudence interpreting it, the owner of an animal which is struck upon a stock law highway has the burden of freeing himself from a presumption of his negligence by showing that he has taken every precaution expected of a reasonably prudent individual to prevent his livestock from leaving their confines and roaming at large. Primeaux v. Kinney, La.App., 256 So.2d 140; Fortenberry v. McCoy, La.App., 233 So.2d 320, writ refused 256 La. 252, 236 So.2d 31; Brown v. Fulton Insurance Company, La.App., 211 So.2d 412, writ refused 252 La. 870, 214 So.2d 545; Colomb v. McDonald, La.App., 131 So.2d 84.
Additionally, the jurisprudence interpreting the Stock Law establishes that, where an animal has been the cause of damage, the burden rests upon the owner of the animal to show when, where, and how the animal escaped from its enclosure, that is, his freedom from fault, even in the slightest degree. Long v. Travelers Insurance Company, 150 So.2d 52 (La.App. 2nd Cir. 1963); Colomb v. McDonald, 131 So.2d 84 (La.App. 3rd Cir. 1961); Parker v. Young, 122 So.2d 699 (La.App. 1st Cir. 1960).
Not only have the defendants failed in the burden required of them as enunciated in the hereinabove paragraph, they readily admit that they have no idea or explanation as to how the animal escaped.
Such being the case, defendants have failed to sustain their legal burden.
I respectfully concur.