CULPEPPER, Judge.
Plaintiff seeks damages for personal injuries received when the pickup truck which he was driving struck a bull owned by the defendant, Henry Kinney Sr. A jury awarded plaintiff $9,000. Defendants appealed. Plaintiff also appealed, seeking an increase in the award.
The issues are: (1) Did the defendant owner of the bull sustain his burden of proving freedom from negligence in permitting the bull to be at large on a state highway? (2) Was the plaintiff motorist guilty of contributory negligence? (3) Is the quantum of the award inadequate ?
. The general facts are that at about 10 :30 p. m. on October 24, 1970 plaintiff was driving his pickup truck in a westerly direction on Louisiana Highway No. 3065 (the Houston River Road) in Calcasieu Parish. The truck collided with a black Brangus bull owned by the defendant Kinney. Plaintiff received serious personal injuries.
The law is clear that the defendant owner of the bull has the burden of proving freedom from negligence in allowing it to be at large on this state highway where livestock are prohibited. See LSA-R.S. 3:2803 and Ross v. Del Valle, 277 So.2d 163 (La.App. 3rd Cir. 1973).
The evidence shows Mr. Kinney has been in the cattle business for many years in the area. He maintains approximately 1,000 head of cattle on 20,000 acres of land. At the point where the accident occurred, Kinney has cattle on land along the south side of the highway for a distance of approximately miles. The fence is constructed of wood posts with four strands of barbed wire and is approximately four years old.
No one knows exactly how the bull escaped. But it was Kinney’s bull, and it had escaped from this pasture.
The defendant Kinney introduced the testimony of an expert in animal husbandry that the type of fencing used is sufficient for this type of cattle. Mr. Kinney, his son, and several of his employees testified they inspected the fence regularly and repaired it when necessary. Additionally, Kinney, his son and at least two employees testified they inspected the fence the day after- the accident and found no opening where the bull could have escaped.
In rebutting this evidence, plaintiff showed that all of defendant’s witnesses who inspected the fence the day after the accident did so by riding slowly along the highway in a vehicle. Plaintiff points out that because the fence is about 21 feet from the highway and is, in places, covered by high weeds, it would be impossible to inspect the fence thoroughly in this manner.
Plaintiff also introduced the testimony of Mr. and Mrs. Weldon DeVille, who live north of the highway near the scene of the accident. They stated they had occasionally seen some of defendant’s cattle at large on the highway before the accident, and that they had actually seen this same bull on the highway and had run him back into defendant’s pasture. Furthermore, Mr. and Mrs. DeVille testified that at a place approximately 1,000 yards from the site of the accident, there was an opening in the fence, the two middle strands of wire being broken, and the upper and lower strands being loose. Pictures taken on December 31, 1970, approximately two months after the accident, show this opening in the fence.
Additionally, Mr. William Baggett, who lives in the area, testified he found one of *379 Mr. Kinney’s bulls on the highway a day or two before the accident and reported this fact to Kinney’s wife. Baggett identified the bull by the brand as being owned by Kinney. Two of Mr. Kinney’s men were dispatched to the area to search for the bull but were unable to find it.
In the recent similar case of Ross v. Del Valle, supra, we held that despite the testimony of defendant and his employees, as to the good condition of the fence, there was sufficient evidence to show the fence was actually not in good condition and that the owner of the cow was negligent. In the present case we have no difficulty in concluding there was sufficient credible evidence to support the jury’s finding that the defendant Kinney was negligent.
The next issue is whether plaintiff was guilty of contributory negligence in driving his vehicle at an excessive speed and/or failing to maintain a proper lookout. The physical evidence shows the point of impact was in the west bound land of traffic, the proper lane for plaintiff. The highway is straight and level and is constructed of asphalt approximately 20 feet in width, with wide shoulders. The weather was clear and plaintiff says he had his headlights on bright. No other traffic was involved.
Defendant contends plaintiff’s failure to maintain a proper lookout is shown by the fact he admitted he was only about two car lengths from the bull when he first saw it. Plaintiff testified the bull ran from the north shoulder of the highway and crossed in front of him headed south. Defendant contends this is proven incorrect by the testimony of one of the state troopers who found cow tracks indicating the bull had come from the south side of the highway and crossed to the north. The argument is that if the bull crossed the east bound lane of traffic first, plaintiff should have seen him in time to avoid the accident.
Defendant also contends the physical facts show plaintiff was driving at an excessive speed. There were no skidmarks prior to the point of impact. The truck was a total loss. The bull was carried on the hood and came to rest 165 feet from the place of the accident. The truck continued on and stopped 365 feet from the point of impact.
The speed limit was 60 miles per hour, and one state trooper estimated plaintiff was exceeding the limit. However, another state trooper said he could not estimate the plaintiff’s speed from the physical facts. Plaintiff explained the distance the truck went after the accident by stating that at about the instant of the impact he attempted to apply his brakes but his foot slipped onto the accelerator.
From this brief review of the evidence, it is apparent there were issues of fact as to whether plaintiff was keeping a proper lookout and/or exceeding the speed limit.
Our jurisprudence is established that where an animal suddenly darts in front of an automobile traveling at a reasonable speed, and there is no opportunity for the motorist to avoid the accident, he will be held free of negligence, Pickett v. Travelers Insurance Company, 127 So.2d 547 (La.App. 3rd Cir. 1961) and the cases cited. There was sufficient credible evidence for the jury to find as a fact in the present case that plaintiff was traveling at a lawful speed and that the bull ran in front of him. Of course, under such facts, plaintiff was free of contributory negligence.
Furthermore, even if the jury found as a fact, as defendant contends, that the bull first crossed the east bound lane of traffic, the jury was justified under our jurisprudence in finding no contributory negligence. The rule is that where livestock are prohibited by law from roaming at large on the highway, the duty of a night motorist to see such animals is *380 reduced, Brignac v. Pan American Petroleum Corporation, 224 So.2d 84 (La.App. 3rd Cir. 1969).
Each of these cases, involving the duty of a night motorist to observe an object ahead on the highway, depends on its own facts, Eubanks v. Wilson, 162 So.2d 842 (La.App. 3rd Cir. 1964). The more recent cases generally hold that a night motorist may assume the road ahead is safe for travel and is not charged with the duty of guarding against striking negligent obstructions to travel, particularly those which are difficult to see and which the motorist had no reason to anticipate.
For instance, in Brignac v. Pan American Petroleum Corporation, supra, we held the night motorist free of negligence in failing to see a black bull on the highway. In Ross v. Del Valle, supra, a night motorist, partially blinded by the lights of an approaching vehicle, was held free of negligence where he struck a red cow standing in the highway. In Fortenberry v. McCoy, 233 So.2d 320 (La.App. 1st Cir. 1970), writ of certiorari refused, 256 La. 252, 236 So. 2d 31, a night motorist, whose vision ahead was momentarily obscured by the lights of an approaching vehicle, and who first observed a black Angus bull only 75 feet ahead, was held free of negligence. Under this jurisprudence, we find no manifest error in the jury’s determination in the present case that plaintiff was free of contributory negligence, even if the bull first crossed the east bound lane.
The final issue is whether the jury’s award of $9,000 is so inadequate as to constitute an abuse of their discretion. Plaintiff proved at least $2600 of medical expense and $100 paid as the deductible portion of his collision insurance on his truck. There is some dispute as to the loss of wages. Plaintiff contends he was earning approximately $200 a week as a carpenter at the time of the accident, that he was totally disabled for 2% months after the accident, and that after he returned to work he was only able to earn about $150 per month for a period of approximately 27 weeks, resulting in a total loss of about $3,000 in wages. Defendant contends plaintiff’s income tax returns showed he earned only $1,627 in 1969, and that his loss of wages was no more than about $1,500.
Assuming that the loss of wages was as low at $1,500, and the other special damages were $2700, this totals $4200 in special damages, which means that the jury’s award for general damages was only $4800. This is clearly inadequate.
At the time of the accident, plaintiff was thrown forward against the steering wheel. He received severe injuries to the abdomen, and bruises and contusions. He regained consciousness and was able to walk to the home of Mr. and Mrs. DeVille nearby, where an ambulance was summoned. On removal to the hospital, it was found that one-half of the right rectus muscle was torn apart, and there were several tears in the large and small intestines. Some of these tears were sutured, but it was necessary to remove five and one-half feet of the small intestine. After the incision was closed a stab wound was made and a drain inserted into the injured tissue.
Plaintiff remained in the hospital 19 days. He was then under the doctor’s care as an outpatient until December 29, 1970, a period of a little more than two months after the accident, at which time he was discharged as being able to return to work. A small nodule later formed on the surgical scar, and this required medical attention in March of 1971.
Plaintiff’s chief residual complaint is that the loss of over 20% of his small intestine has caused him to have three or four bowel movements per day, which in turn has caused hemorrhoids. Dr. Edward Nagem, the surgeon, testified that although this condition should clear up, it may be permanent. Dr. Paul Shorts, the general practitioner and treating physician, testified that as of the date of the trial in Feb *381 ruary of 1972, he was still treating plaintiff for complaints of stomach distress, frequent bowel movements and hemorrhoids. Plaintiff did not have hemorrhoids or diarrhea before the accident.
Summarizing, the evidence shows clearly that plaintiff suffered severe abdominal injuries consisting of a tearing of the abdominal muscles, and injury to the large and small intestines. Five and one-half feet, of the approximately 23 feet of small intestines, were removed. He has a surgical scar 10^ inches long. He also suffered the usual bruises and contusions. As a result of the accident, he has frequent bowel movements, stomach pain and distress, and a hemorrhoidal condition which may continue the rest of his life.
The only Louisiana case found involving the loss of intestines is Dixon v. Succession of Gray, 271 So.2d 602 (La.App. 1st Cir. 1972). There, the abdominal injuries resulted in the loss of 15 inches of small intestine and a portion of the colon, causing diarrhea for about six months after the accident. The other injuries consisted of lacerations of the lip, chin and knee, abrasions and contusions, a fractured nasal spine and seven broken ribs. The district judge’s award of $7,500 in general damages was increased to $22,500 by the Court of Appeal. Of course, we recognize that in the Dixon case the injuries, other than those pertaining to the abdomen, were much more serious than in the present case. However, in the case before us the abdominal injuries were much more serious than those in the Dixon case.
We find the award for general damages must be increased to $15,000, and that the total award must be increased to $19,200.
For the reasons assigned, the judgment appealed is amended by increasing the award from $9,000 to the sum of $19,200. Otherwise, the judgment is affirmed. All costs of this appeal are assessed against the defendants appellants.
Affirmed, as amended.