LANDRY, Judge.
The Louisiana Department of Highways (Department) appeals from judgment awarding plaintiffs damages for personal injuries, related medical expense and property damages resulting from an automobile accident in which a vehicle owned and being driven by plaintiff Gary Boué struck a cow while said vehicle was being driven southerly along Interstate 59 (1-59) in St. Tammany Parish. Boué and his guest passenger, James Slayton, Jr., were injured in the accident. State Farm Mutual Automobile Insurance Company (State Farm), insurer of the Boué vehicle, was granted recovery on its subrogation claim for medical benefits paid Boué’s guest passenger. The trial court found the Department negligent in failing to properly maintain the fences along 1-59, thus permitting cattle to enter the highway. We reverse upon finding no negligence on the part of the Department.
The issues presented are: (1) was the Department negligent in failing to prevent the animal from entering the interstate highway by its alleged failure to maintain fences constructed along the highway right- *1135 of-way; (2) was the Department negligent in failing to timely remove the animal from the highway; and (3) was the Department at fault in failing to erect signs in the area warning motorists of the possibility of livestock being on or near the highway.
Subject accident occurred between 9:00 and 10:00 P.M. August 9, 1975, approximately one and one-half miles south of the Mississippi-Louisiana line. Boué was driving his 1966 Volkwagen van southerly in the right or outside lane. He did not see the cow prior to impact. After impact, the van veered off the roadway and collided with a tree near the highway right-of-way.
At the accident scene, 1-59 is bounded on the east by an area known as Honey Island Swamp Reserve (swamp), and on the west by a wooded area which includes open range on which cattle are known to graze. Both sides of the highway are largely uninhabited. The highway is fenced on both the east and west side. The fence is located approximately one foot within the right-of-way and is constructed with wood posts in some places and metal posts in other locations. A mesh hog wire fencing material is affixed to the posts at ground level and extends upward approximately three or four feet. Above the hog wire is installed two or three strands of barbed wire, the topmost strand of which is about five feet above the ground. The Department’s Assistant District Maintenance Engineer, M. K. Johnston Civil Engineer, testified that the fence along the highway is required by Federal regulations because 1-59 is a Federal project constructed largely with Federal funds. He explained that the fence was not intended to keep out cattle but is meant principally to mark the highway right-of-way limits and to preserve the limited access feature of the highway by preventing ingress and egress to the highway at other than established and permissible exits and entrances.
Plaintiffs contend the Department was negligent because the swamp was known as a cattle pasture and because the Department knew or had reason to know that the fence on the swamp side of the highway was constantly being breached by hunters and fishermen to gain access to the swamp which is in effect a game preserve. Plaintiffs also contend the Department was aware of the prevailing conditions and failed to take adequate measures to either repair fences, inspect for breaks, timely remove cattle from the highway, or post warning signs to alert motorists to the danger of animals on the highway.
Although the Department is required to maintain highways in such condition that they are reasonably safe for persons exercising reasonable prudence and caution under the circumstances, the Department is not the insurer of the safety of motorists using the public highways. Doucet v. State, Department of Highways, 309 So.2d 382 (La.App.3d Cir. 1975).
There is no fixed rule for determining what is a dangerous" defect in a public highway. Each case must be determined in the light of its own peculiar facts and circumstances. The test to be applied is whether the roadway was maintained in a reasonably safe condition for persons exercising ordinary care and caution. Pickens v. St. Tammany Parish Police Jury, 323 So.2d 430 (La.1975).
The duty of the Department to maintain roads in a reasonably safe condition for the traveling public includes the duty of reasonable, continuous inspection of the highways and bridges. McCullin v. State Department of Highways, 216 So.2d 832 (La.App.2d Cir. 1968).
The Department has the duty to repair and make safe any defects in the highways of which it has or should have notice. Hale v. Aetna Casualty & Surety Company, 273 So.2d 860 (La.App.2d Cir. 1973).
For liability of the Department to attach because of its failure to correct or repair a defective roadway, it must be shown that the Department had real or constructive notice of the defect and failed to correct it within a reasonable time. Wilkinson v. American Insurance Co. of Newark, N. J., 311 So.2d 584 (La.App.3d Cir. 1975).
*1136 Conditions on a highway which amount to a trap of which an unknowing, unsuspecting motorist has no knowledge, which are known or should be known to the Department of Highways, and from which danger can reasonably be anticipated, constitute actionable negligence on the part of the Department. Cain v. Houston General Insurance Co., 327 So.2d 526 (La.App.2d Cir. 1976).
The record establishes beyond doubt that to the knowledge of the Department the fences in the area were cut or broken with some frequency due to four primary causes: (1) sportsmen cutting the fence on the east side of the highway to enter the game preserve; (2) vehicles running off the highway and crashing into the fence; (3) falling limbs or trees; and, (4) periodic rising waters. There is some indication that in rare instances cattle are believed to have entered the roadway by jumping the fence near a bridge where the fence was constructed on a downslope.
Plaintiffs rely mainly on the testimony of three State Troopers who were assigned to patrol subject highway prior, at the time of, and subsequent to the accident in question, to establish the Department’s alleged negligence. The accident was investigated by Trooper O. E. Singletary who attested to having received frequent reports of cattle on the highway prior to the accident. He investigated each report personally or else relayed the information to headquarters when he could not make a personal investigation. He also mentioned having assisted in removing cattle from the highway on numerous occasions. In many instances he could not determine how or where the cattle entered the roadway because no evidence of a fence gap could be found. He acknowledged that the fence on the swamp side of the highway was cut frequently by sportsmen who parked vehicles in the right-of-way. To discourage fence cutting, citations were issued arid parked vehicles were towed away. He acknowledged that the problem had improved considerably some time prior to subject accident, due to the mentioned enforcement program. He knew of no instance of breaks in the fences immediately prior to subject accident. Neither did he know how the cow in question gained access to the highway or how long the animal was on the road prior to the accident. He could not state whether the Department had actual notice that the animal was in the right-of-way. During his patrols, it was his custom to report to his superior any evidence of a fence break. In turn, the matter was reported to either the Department or the State Police Livestock Patrol, which dispatched horses and men to round up the cattle and remove them from the highway. On occasion he assisted in removing animals from the highway.
Patrick Canulette, State Trooper, Patrolman, assisted Singletary in the investigation of subject accident. In essence he testified to the same effect as did Singletary. He did not know how this particular animal gained entry to the highway. He added, however, that the animal in question was familiar to him in that he had seen this same animal on the highway on previous occasions.
J. N. Shillings, Member, Livestock Patrol, State Police, testified to having rounded up stock on the highway in question. He explained that his duties were to round up cattle, not to fix fences. He added that whenever he observed a fence break he reported the matter via two-way radio to his headquarters or the nearest local sheriff’s office, whichever was most convenient. The office contacted would in turn report the break to the Department of Highways. He did not know how the animal in question gained entry to the highway or how long it had been on the highway prior to the accident.
William H. Slaydon, alleged owner of subject animal, also attested to fences being cut by sportsmen and knocked down by vehicles. He saw no fence down near the accident site at any time prior to the accident. He denied ownership of the animal in question and could not say how long it was on the highway prior to the accident.
From the foregoing it is clear that plaintiffs failed to show how the animal entered *1137 the highway or how long it had been on the road before the accident. It is also clear that the Department did not have actual knowledge of the animal being on the highway. Under the circumstances there can be no liability on the part of the Department on the ground that the Department knew or should have known of the presence of this particular animal on the highway. Wilkinson v. American Insurance Co. of Newark, N. J., supra.
Under the jurisprudence, we find there can be no liability on the part of the Department unless it appears by a preponderance of evidence that the Department was remiss in failing to conduct adequate inspections, taking measures to repair broken fences and/or posting signs to warn motorists of the possible presence of livestock on the highway.
George Decker, Department employee (Foreman) in charge of grass cutting in the area in question, stated it was customary for his crews to make temporary repairs (when possible) of fences found to have been broken or knocked down, and to report the incident to higher authority for permanent repairs. He was unaware of any other accident in this same area resulting from an animal straying onto the highway. He also attested to keeping fencing materials available to make repairs when necessary.
M. K. Johnston, Civil Engineer, Department Assistant District Maintenance Engineer, was in charge of subject area at the time of the accident. He acknowledged receipt of reports of broken fences due to automobile accidents, falling trees, cutting of wire by sportsmen and floodwaters. Most reports were submitted by State Troopers patrolling the area. On occasion his own crews reported damage to fences. Upon receipt of such notice he scheduled repairs at the first possible opportunity. He had no knowledge of how subject animal gained access to the highway but assumed entry was through a downed fence. He had no knowledge of this particular animal being on the highway prior to the accident.
James Breland, a longtime Department employee, became Maintenance Superintendent for St. Tammany Parish in December, 1975, following subject accident. He testified regarding inspection of the highways in St. Tammany Parish (400 miles in all) prior to the accident and to his making a bi-weekly inspection of all highways after becoming Maintenance Superintendent. Whenever a report was received concerning damaged fencing, he sent out repair crews. To discourage cutting of fences by sportsmen he enlisted the aid of State Troopers who issued citations to owners of vehicles parked on the highway right-of-way or else towed away such illegally parked vehicles. Since becoming Maintenance Superintendent, he included fence inspection as part of his duties..
We find no breach of the Department’s duty to maintain fences in a condition reasonably anticipated to keep cattle off the highway. Although the fences in question were not constructed primarily to prevent cattle from entering the highway, the record establishes overwhelmingly that the fences adequately served this purpose. The difficulties encountered were not due to design or material defects but to circumstances beyond the control of the Department. The Department could not prevent vehicles from crashing the fences, trees or limbs from falling on the fences or flood waters from rising. The cutting of fences was dealt with by the Department in a reasonable manner since the Department has no law enforcement authority.
The duty of reasonable maintenance incumbent upon the Department includes the obligation to continuously inspect the highways. Although such duty does not impose the onus of perfect inspection, reasonable care is required in this regard to keep highways reasonably safe. Vervik v. State, Department of Highways, 278 So.2d 530 (La. App.1st Cir. 1973) reversed on other grounds, 302 So.2d 895 (La.1974).
We find the Department employed reasonable inspection procedures in this instance. It employed a systematic inspection procedure through its Maintenance Superin *1138 tendent, required maintenance and grass cutting crews to make temporary repairs and report fence damage to superiors, and worked in conjunction with patrolling State Troopers. When made aware of animals on the highway, it took timely and reasonable steps to remove the animals and repair fence damage which allowed their entry. We find nothing to impose the duty of conducting a continuous 24-hour patrol to detect the presence of livestock on the highway.
Neither do we find the Department negligent for failing to post signs warning of the possibility of livestock on the highway. The Department’s duty to post signs exists primarily in areas where there is inherent danger such as in the case of obstructions or excavations in a highway or a highway ends abruptly, or where a dangerous or unusual curve exists or a bridge has been destroyed. Watts v. City of Baton Rouge, 248 So.2d 42 (La.App.1st Cir. 1971); LeJeune v. State, Department of Highways, 215 So.2d 50 (La.App.3d Cir. 1968). We find no such danger in this instance. Several witnesses testified that although they were aware of the problem of cows entering the highway through broken fences, they were unaware of accidents resulting therefrom.
In effect plaintiff would have us impose (and the trial court did impose) on the Department the same burden of proof incumbent upon the owner of livestock pursuant to La.R.S. 3:2803, as judicially interpreted. An owner whose stock escapes and enters a public highway in an area where such animals are not permitted to roam at large, must exculpate himself from a presumption of negligence. Ross v. Del Valle, 277 So.2d 163 (La.App.3d Cir. 1973). No such burden rests on the Department.
We find that the trial court erred as a matter of law in imposing upon the Department a burden it does not bear. In effect, the reasons given by the trial court make the Department the insurer of the safety of persons using public highways, contrary to established jurisprudence. U.S.F.&G. Company v. State, Dept. of Highways, 339 So.2d 780 (La.1976).
The judgments in favor of plaintiffs Gary Raymond Boué, James D. Slayton, Administrator, and State Farm Mutual Automobile Insurance Company against the Department are hereby annulled, reversed and set aside and said plaintiffs’ actions against the Department are dismissed with prejudice. In all other respects the judgment is affirmed. All costs of these proceedings are assessed against plaintiffs Gary Raymond Boué, James D. Slayton, Administrator, and State Farm Mutual Automobile Insurance Company in equal proportion.
REVERSED IN PART, AFFIRMED IN PART AND RENDERED.