# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 04-203

**ANNA ELDRIDGE AND HARDY ELDRIDGE**

**VERSUS**

**CHARLES D. CARRIER, ET AL.**

**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
THIRTY-THIRD JUDICIAL DISTRICT COURT
PARISH OF ALLEN, NUMBER C-2001-386
HONORABLE JOEL G. DAVIS, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

## MARC T. AMY
## JUDGE

**\*\*\*\*\*\*\*\*\*\***

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Billie Colombaro Woodard, Marc T. Amy, Michael G. Sullivan, and John B. Scofield\*, Judges.

**AFFIRMED.**

**Thibodeaux, C.J., dissents for the reasons assigned by Judge Woodard.**
**Woodard, J., dissents and assigns written reasons.**

L. Clayton Burgess
Post Office Drawer 5250
Lafayette, Louisiana 70502-5250
(337) 234-7573
COUNSEL FOR PLAINTIFFS/APPELLANTS:
    Anna Eldridge
    Hardy Eldridge

David A. Hughes
Hughes & Lafleur
Post Office Box 1831
Alexandria, Louisiana 71309-1831
(318) 443-4090
COUNSEL FOR DEFENDANTS/APPELLEES:
    Charles D. Carrier
    State Farm Mutual Automobile Insurance Company

\* John B. Scofield participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore

**James B. Reichman**
**Post Office Box 210**
**Alexandria, Louisiana 71309-0210**
**(318) 442-3251**
**COUNSEL FOR DEFENDANT/APPELLEE:**
      **State Farm Mutual Automobile Insurance Company**

AMY, Judge.

The plaintiff and her husband filed suit against the defendant and his automobile liability insurer, seeking damages related to injuries she alleges that she sustained in an automobile accident with the defendant. Following a trial, the jury found in favor of the defendant. The plaintiffs appeal, contesting the jury's finding that the defendant was not at fault in causing the accident, as well as other evidentiary issues. For the following reasons, we affirm the judgment of the trial court.

**Factual and Procedural Background**

The accident from which the instant matter arose occurred at approximately six o'clock on the evening of August 17, 2000, in Oberlin, Louisiana. According to the record, Charles D. Carrier, the defendant herein, was leaving Polly's Café with his elderly mother. Mr. Carrier had parked his Lincoln Towncar in an angle parking spot in front of the café on Sixth Avenue.[1] As he backed from his parking spot, the rear portion of his car was struck by the front of Anna Eldridge's Dodge Ram pick-up truck.

Prior to the accident, Ms. Eldridge testified that she had been at the house of her friend, Terri Durio. Ms. Eldridge stated that they had called two other friends and that the group was going to go to a casino together. Ms. Eldridge testified that each member of the party drove separately to the casino, with herself driving in front, followed by Ms. Durio in her Geo Metro, and the other members behind her. Ms. Eldridge drove south on Highway 26 and turned left onto Sixth Avenue. She continued in an easterly direction on Sixth Avenue until her car collided with Mr.

---

[1] The street on which the accident occurred is referred to throughout the record as "Sixth Avenue," "Main Street," and "Sixth Avenue Main Street." We will refer to the street as "Sixth Avenue."

1

Carrier's as he backed out onto Sixth Avenue. Testimony indicated that the force of the collision pushed Mr. Carrier's car back into the parking spot, albeit at an angle. Ms. Eldridge stated that she was taken by ambulance for treatment of burns and bruises she suffered when her air bag deployed in the accident. She later treated with numerous doctors for injuries to her neck and back that she alleges she sustained in the collision.

Ms. Eldridge and her husband, Hardy Eldridge, filed suit against Mr. Carrier and his insurer, State Farm Mutual Automobile Insurance Company, on July 19, 2001. Although the parties reached an agreement regarding property damages, a jury trial proceeded on the issues of liability and expenses for Ms. Eldridge's past and future medical treatment. The jury found in favor of the defendant, answering "No" to the question "Was the defendant, Charles Carrier, at fault and was such fault a cause in fact of the accident?" The plaintiffs appeal the verdict, asserting the following as error:

1. The jury abused it[s] discretion and committed manifest error when it disregarded the law as it pertains to backing out of a parking space and all of the uncontroverted testimony, including that of the defendant who did not see the plaintiff when he backed out, in finding that the defendant Charles Carrier was not at fault at all for the automobile accident and injuries sustained by plaintiff, Anna Eldridge.

2. The judge committed legal error in allowing a non-expert police officer to give the ultimate conclusion as to how the accident occurred despite the fact the police officer did not see the accident, was not an expert, and admitted he was not an expert.

3. The judge committed legal error in allowing a diagram showing the ultimate conclusion of the point of impact and prepared by a non-expert police officer into evidence even after the police officer admitted the diagram was not accurate and was not to scale.

4. The judge in this matter committed legal error in allowing the jury to hear evidence of Hardy Eldridge's employee benefits at his job

2

in order to argue that the medical bills should have or could have been paid by his health insurance.

## Discussion

*Fault*

The plaintiffs assert that the jury was incorrect in finding that Mr. Carrier was not at fault for the accident. Pointing to Mr. Carrier's testimony that he did not see Ms. Eldridge's vehicle behind him when he checked before backing into the street,[2] the plaintiffs argue that Mr. Carrier breached a duty to "see what he should have seen." In support of this assertion, the plaintiffs cite La.R.S. 32:281(A), which states that "[t]he driver of a vehicle shall not back the same unless such movement can be made with reasonable safety and without interfering with other traffic." They also refer to numerous cases which state that motorists who are backing have a high duty of care. *See, e.g., McDonald v. Hollingsworth*, 02-131 (La.App. 5 Cir. 6/26/02), 823 So.2d 408; *Taylor v. Chism*, 27,186 (La.App. 2 Cir. 8/23/95), 660 So.2d 145.

In response, the defendants suggest that Mr. Carrier did not breach his duty because he did, in fact, turn around to look down Sixth Avenue for oncoming traffic. However, the defendants suggest at trial and on appeal that he did not see Ms.

---

[2] Mr. Carrier testified as follows:

Q: Once you got her [Mr. Carrier's mother] back in the car, what did you do?

A: I started the car and I looked back over on my right side. I could not see anything coming. I put the car in reverse and started backing up, at which point, I put my brakes on to put the car in drive and to go forward because there was no - there wasn't a car on the right hand side - my left hand side and I didn't have to back very far out. I could negotiate the automobile to get back onto the highway.

Q: Okay.

A: At which time then, I was hit in the back with a very severe lick, which pushed my mother out of the seat belt and onto the floor of the vehicle.

. . . .

Q: You said that you looked over your right shoulder and saw nothing. Could you see the end of the street when you looked over your shoulder?

A: Yes, sir, I could see. I saw nothing. That's correct.

Q: But you could see some of the street, and at that point, you saw nothing on the street?

A: And I proceeded to go on back.

3

Eldridge because she had not yet made her turn onto Sixth Avenue when Mr. Carrier checked. According to the defendants, the fact that Ms. Eldridge's vehicle collided with the back of Mr. Carrier's vehicle demonstrates that it was her, and not him, who was driving carelessly. The defendants point to Ms. Eldridge's trial testimony, in which she stated:

> Q. Mrs. Eldridge, the police officer's report says, "Driver of vehicle two" - and that's you designated here - "stated that she saw vehicle one backing out of the parking area, but she thought that he was going to stop. After seeing vehicle one wasn't going to stop, it was too late for her to stop."
>
> A. Right.
>
> Q. Did you tell him that?
>
> A. Yes, sir.
>
> Q. That's not what you told us earlier, though, is it?
>
> A. Yes, it is.
>
> Q. Okay. You saw him - As you approached, you saw him backing out?
>
> A. Right.
>
> Q. You saw that he was backing out?
>
> A. Yes, sir. Well, I seen the lights. Within a split second, he was on me. I didn't have time to stop.
>
> Q. Okay. In answering the interrogatories, you were asked, "Please give a concise detailed description of the manner in which the accident complained of herein occurred."
>
> A. Right.
>
> Q. And your answer was, "Plaintiff contends that she was headed east on Sixth Avenue, Main Street, when she observed Charles Carrier's vehicle backing out of the parking area of Polly's Café. She contends that she thought that he was going to stop. And by the time that she realized that he was not stopping, it was too late for her to stop."

4

A. Right.

The defendants reference on appeal the testimony of the investigating officer, Officer Voorhies Leger of the Oberlin City Police Department, who presented the photographs he took after the accident. The photographs show skid marks on the road which the officer testified were made by the right rear tire of Mr. Carrier's vehicle. The defendants assert that Mr. Carrier's vehicle made the marks because Mr. Carrier's foot was on the brake as he was in the process of shifting the car from reverse into drive in order to proceed forward on Sixth Avenue.

This court has stated the standard of review for determining fault in an automobile accident case as follows:

> We may not set aside a jury's finding of fact in absence of manifest error or unless it is clearly wrong. *Rosell v. ESCO*, 549 So.2d 840 (La.1989); *Stobart v. State, through DOTD*, 617 So.2d 880 (La.1993). In applying the manifest error-clearly wrong standard, we must determine not whether the jury was right or wrong, but whether its conclusion as factfinder was a reasonable one. *Mart v. Hill*, 505 So.2d 1120 (La.1987). We are compelled to review the record in its entirety to determine whether the jury's finding was clearly wrong or manifestly erroneous. *Id.* We may not reverse if the jury's findings are reasonable in light of the record when reviewed in its entirety, even if convinced that if we had been sitting as the trier of fact, we would have weighed the evidence differently. *Sistler v. Liberty Mutual Ins. Co.*, 558 So.2d 1106 (La.1990).

*Billings v. State, Through DOTD,* 01-131, p. 11 (La.App. 3 Cir. 6/13/01), 826 So.2d 1133, 1140. One of the jury's most essential duties is to evaluate the credibility of the witnesses. *Hebert v. Bellsouth Telecomms., Inc.*, 01-223 (La.App. 3 Cir. 6/6/01), 787 So.2d 614, *writ denied*, 01-1943 (La. 10/26/01), 799 So.2d 1145. A jury's factual findings must be granted great deference in trials in which credibility is an issue. *Guillory v. Ins. Co. of N. Am.*, 96-1084 (La. 4/8/97), 692 So.2d 1029.

5

Based upon our review, the record was sufficient to support the jury's finding that the plaintiff had not proven by a preponderance of the evidence that the defendant was at fault and such fault was a cause in fact of the accident. The record reflects that both the plaintiff and the defendant, as well as Ms. Durio and the investigating officer, testified regarding the circumstances surrounding the accident. The jury was able to consider their testimony and assess the credibility of each witness in reaching its decision. Although the plaintiffs point to jurisprudence indicating that a motorist backing his vehicle owes a high duty of care to perform the maneuver reasonably, we find no manifest error in the jury's finding that the plaintiffs failed to prove Mr. Carrier's breach of this duty by a preponderance of the evidence. Both drivers testified that they were moving at a slow rate of speed and maintaining a proper lookout,[3] yet both drivers also testified that they did not see the other until the accident or the instant before it.[4] The jury was also made aware of the drivers'

---

[3] Ms. Eldridge testified as follows:

Q: Were you paying attention to what you were doing?
A: Yes, I was.
Q: All right. How fast were you going prior to the accident occurring?
A: I'm going to guess maybe fifteen to twenty miles an hour at the most.

Mr. Carrier testified that upon looking over his shoulder to check Sixth Avenue, he "could not see anything coming" and then he began to back out of the space. He also testified as follows:

Q: When you started backing out, did you gun it to back up?
A: No, sir, very slowly. There was no need for me to be gunning the car.
. . . .
Q: Okay. But it's your testimony that you did not accelerator [sic] quickly in any manner when you were backing out of the parking spot?
A: No, sir, I did not.

[4] Mr. Carrier testified that although he had looked over his shoulder to check Sixth Avenue, he had told the investigating officer that he did not see Ms. Eldridge until the collision. Ms. Eldridge testified as follows:

Q: Once I made the curve, I got approximately in front of Polly's Cafeteria, I seen the lights out of the corner of my eye, the tail lights. I don't even know what kind of lights. Just light. And all of a sudden, he was right up on me. I couldn't - I just never had time to stop.
A: All right. How fast did it happen?
Q: A split second.

ability to see, including obstructions to the roadway, and heard assertions from each driver regarding exactly what he or she did see. The jury further considered the conflicting testimony of the witnesses regarding their recollection of the events. Given this presentation of evidence, we find no clear error in the jury's decision either to credit Mr. Carrier's testimony regarding his checking the roadway or to discredit Ms. Eldridge's testimony regarding her approach. Thus, the record supports the jury's determination. This assignment is without merit.

*Admissibility of Investigating Officer's Testimony & Diagram*

The testimony of Officer Leger, the investigating officer on the scene of the accident, serves as the basis for two of the plaintiffs' assignments of error; we will consider them together. First, the plaintiffs contend that the trial court allowed the officer to provide an ultimate conclusion "as to how the accident occurred," although he was not admitted as an expert.

Louisiana Code of Evidence Article 701 allows a lay witness to give testimony in the form of opinions or inferences if the opinions or inferences are: "(1) Rationally based on the perception of the witness; and (2) Helpful to a clear understanding of his testimony or the determination of a fact in issue." A trial court is vested with broad discretion in allowing limited testimony of a lay witness in accordance with La.Code Evid. art. 701. La.Code Evid. art. 701 cmt b. "[O]pinion testimony has been permitted by police officers who are not experts based on training, investigation, perception of the scene, and observation of physical evidence." *Cooper v. State Dep't Of Transp. And Dev.*, 03-1847, p. _ (La.App. 1 Cir. 6/25/04), __ So.2d __; *See Bozeman v. State*, 34,430 (La.App. 2 Cir. 4/4/01), 787 So.2d 357, *writ denied*, 01-1341 (La. 6/29/01), 794 So.2d 813.

7

The plaintiffs objected at trial to the officer's testimony that he used skid marks that he believed were created by Mr. Carrier's car in forming his opinion of where it was located at the time of impact. The trial judge allowed the testimony, but issued an instruction to the jury as follows:

> I'll give a limited instruction. Ladies and gentlemen of the jury, one thing that the Court needs to make sure that you understand is that there are two different types of witnesses. There are expert witnesses and there are lay witnesses, that is ordinary people using their ordinary sensibilities and experiences. Officer Leger has not been qualified as an expert witness, so he is not giving an expert opinion using physics and maybe friction coefficients and things like that in determining where the cars were absolutely, positively as far as science. He's giving a lay opinion and he's entitled to give a lay opinion as to what he perceived and his best guess as to where the cars were when the collision took place and maybe where the cars ended up and things such as that. But I just wanted to draw your attention to distinction [sic] between an expert witness and a lay witness.

Based on our review of the record and Officer Leger's testimony, we do not find that the trial court abused its discretion in allowing him to offer his opinion as to the placement of the cars immediately preceding the accident. Color photographs which he took of the skid marks that he testified he used in formulating the opinion were entered into the record, and the jury was specifically instructed that the officer's opinion was not to be given the weight accorded an expert. This assignment is without merit.

The plaintiffs next contend that the trial court erred in allowing the admission of Officer Leger's diagram of the scene from his police accident report. Police reports are specifically excluded from the public records exception to the inadmissibility of hearsay evidence. La.Code Evid. arts. 802, 803(8)(b)(i). This court has stated that "[i]t is well settled law that police reports and test results are inadmissible hearsay when the author of the report is unavailable for

8

cross-examination." *McDaniel v. DeJean*, 556 So.2d 1336, 1338 (La.App. 3 Cir. 1990). However, where an officer is made available at trial for cross examination, this court has allowed an officer to use his report during his testimony as a "past recollection recorded" where the report was written contemporaneously with the accident and the witness is sure it is correct. *Primeaux v. Kinney*, 256 So.2d 140, 144 (La.App. 3 Cir. 1971). In this case, Officer Leger testified and was cross-examined extensively regarding his depiction of the scene. The officer stated that he had not taken measurements of the scene and, thus, the depiction was not drawn to scale.

Louisiana Code of Evidence Article 103(A) provides, in part, that an error may only be predicated upon a ruling which admits or excludes evidence if a substantial right of the party is affected.[5] "In reviewing the evidentiary decisions of a trial court, this court must consider whether the particular ruling complained of was erroneous, and if so, whether the error prejudiced the complainant's case. Reversal is not warranted unless the error prejudiced the complainant's case." *Johnson v. First Nat'l Bank of Shreveport*, 00-870, p. 29 (La.App. 3 Cir. 6/20/01), 792 So.2d 33, 55 (citation omitted), *writs denied*, 01-2770 (La. 1/4/02), 805 So.2d 212; 01-2783 (La. 1/4/02), 805 So.2d 213.

In this case, Officer Leger testified that he was not qualified to make the proper measurements to draw a depiction to scale. He further testified as follows:

---

[5] Louisiana Code of Evidence Article 103(A) states:

A. **Effect of erroneous ruling**. Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and
(1) **Ruling admitting evidence**. When the ruling is one admitting evidence, a timely objection or motion to admonish the jury to limit or disregard appears of record, stating the specific ground of objection; or
(2) **Ruling excluding evidence**. When the ruling is one excluding evidence, the substance of the evidence was made known to the court by counsel.

Q: You self [sic] recognize that you're not an expert to make a drawing like that to determine exactly what has occurred, is that right?

A: Correct.

Q: And what you're basically doing is just trying to get a little sketch down so two years from now people will generally know where the accident occurred and in general what's (inaudible)?

A: Yes, sir.

Based on the clear testimony by Officer Leger regarding the accuracy of the diagram and the jury's ability to weigh that testimony given information regarding its credibility, we do not find the admission of the diagram, even if in error, caused such prejudice to the plaintiffs' case that it would form a basis for error requiring correction.

*Collateral Source Rule*

In their final assignment of error, the plaintiffs assert that the trial court's allowance of testimony regarding Mr. Eldridge's employee health insurance plan constituted a violation of the collateral source rule. "Under the collateral source rule, a tortfeasor may not benefit, and an injured plaintiff's tort recovery may not be reduced, because of monies received by the plaintiff from sources independent of the tortfeasor's procuration or contribution." *Louisiana Dep't of Transp. and Dev. v. Kansas City S. Ry. Co.*, 02-2349, p. 6 (La. 5/20/03), 846 So.2d 734, 739.

Upon the commencement of the line of questioning referring to the benefits at trial,[6] the plaintiffs' counsel raised an objection, which the trial court overruled,

---

[6] Mr. Eldridge testified as follows:
    Q: Are you employed?
    A: Yes, sir.
    Q: Where do you work?
    A. Cargill Salt Mine, Avery Island, Louisiana.
    Q. Okay. Do you have employee benefits for your . . .
MR. BURGESS:
    At this time, I would like to approach.

10

stating as its reasons:

> Court will overrule the objection. She [Ms. Eldridge] testified that the reason that she has not seen any medical provider in many months is because of her lack of funds. He's able to probe this witness to find out whether or not there was any medical instance which would contradict the statement (inaudible) availability of medical treatment.

Questioning continued and Mr. Eldridge testified that the health insurance benefits that he received through his employer did include his wife. The plaintiffs assert that the exposure of this information to the jury may have influenced their decision in finding fault for the accident and, accordingly, the trial court erred in

---

THE COURT:
> Yes, sir. (Discussion had at the bench was out of the hearing of the jury.)

MR. BURGESS:
> Judge, here is my objection. This gentleman's employee benefits or lack thereof are one-hundred and fifty percent irrelevant to this case. We have not made them an issue in any form or fashion. So first of all, they're irrelevant. Second of all, clearly this seems to be some type of bizarre attempt to confiscate or come around the collateral source rule, which clears [sic] says that any other source of income and/or payment for possible recovery should not be included. And it appears to me as though that Mr. - that the defense counsel is trying to get around that. I mean, benefits or lack thereof is a hundred and fifty percent . . .

THE COURT:
> Court will overrule the objection. She testified that the reason that she has not seen any medical provider in many months is because of her lack of funds. He's able to probe this witness to find out whether or not there was any medical insurance which would contradict the statement (inaudible) availability of medical treatment.

MR BURGESS:
> Judge, if I can just make my record. That's all I ask to do for appeal purposes. Clearly the law is clear that health insurance benefits or lack thereof is a collateral source payment.

THE COURT:
> Sure, but that goes to the (inaudible). It does not go to the availability of ...

MR. BURGESS:
> If I could just finish. If I could just finish. To make the - To make the assumption without the contract, without the person from the health insurance company here that somehow she could have got paid is clearly (inaudible). And we're so prejudiced because there's no way that I'm going to get an adjuster here in such a short period of time to testify that under the contract it was an accident and they don't pay.

THE COURT:
> He can testify, if that's [the] case or you can have her testify.

MR. BURGESS:
> Anyway, that's my objection.

THE COURT:
> Your objection is noted and the objection is overruled.

11

allowing the testimony.

However, we note that the plaintiffs' counsel had the opportunity to question Mr. Eldridge, as well, to clarify the nature of the health insurance benefits.[7] Mr. Eldridge testified that the health insurance benefits were not payable because the injuries were sustained due to an accident. Given this rehabilitative testimony, we find that even if the testimony regarding health insurance benefits was improper, an issue we need not reach, any error committed was harmless in view of Mr. Eldridge's testimony that the health insurer would not pay any claims for Anna Eldridge related to the accident. Therefore, this assignment is without merit.

## DECREE

For the foregoing reasons, the judgment of the trial court is affirmed. All costs of this proceeding are assigned to the plaintiffs, Anna Eldridge and Hardy Eldridge.

**AFFIRMED.**

---

[7] Mr. Eldridge testified as follows:

Q: Hardy, I want to make sure that we clear this up because even though I've made my objection, I want to make sure that we understand each other. You were asked about health care benefits. Here is my question to you. Isn't it true that because this was an accident that you and Anna contacted the health insurance company and they told you that they would not pay any for accident claims because State Farm was supposed to be responsible for the bills?
A: That's correct.
Q: So this was not some situation where you're just sitting around claiming that you can't afford the bills. The bottom line is that your health insurance told Anna that they're supposed to pay for the bills because it's an accident, correct?
A: That is correct.
Q: This is not some situation where you're just sitting around hoping that State Farm picks them up, correct?
A: Correct.
Q: So if they make this implication that somehow you could have got this paid, that's not true, is it?
A: No.

12

NUMBER 04-203

COURT OF APPEAL, THIRD CIRCUIT

STATE OF LOUISIANA

**ANNA ELDRIDGE AND HARDY ELDRIDGE**

      Plaintiffs - Appellants

Versus

**CHARLES D. CARRIER, ET AL.**

      Defendant - Appellee

On appeal from the 33rd Judicial District Court [No. 2001-386], for the Parish of Allen, State of Louisiana; the Honorable Joel G. Davis, District Judge, presiding.

Woodard, J., dissenting.

I respectfully dissent from the majority's opinion.

This case's resolution does not require the manifest-error review because the material facts concerning how the accident happened are not in dispute. Rather, the jury failed to apply the law. In this instance, due to the unusually high duty of care a backing motorist owes when entering a favored street from an unfavored private parking area and given Mr. Carrier's acknowledgment that, while backing up, he never saw Mrs. Eldridge's truck approaching, he must bear liability. Our supreme court in *Turner v. New Orleans Public Service Inc.*[1] held that backing up without knowing if it can be done safely is an example of gross negligence.[2] "Furthermore, it is only in the exceptional case where the right-of-way motorist could have avoided

---

[1] 476 So.2d 800 (La.1985).

[2] *See Andrews v. Mosley Well Serv.*, 514 So.2d 491 (La.App. 3 Cir.), *writ denied*, 515 So.2d 807 (La.1987). *See also Francis v. Commercial Union Ins. Co.*, 594 So.2d 1025 (La.App. 3 Cir. 1992).

1

the accident by the exercise of the very slightest degree of care that he will be considered guilty of negligence."[3]

Mr. Carrier testified that, after he entered 6th Avenue and put his foot on the brake, Mrs. Eldridge's truck struck his car in the rear and nearly pushed it back to its previous parked position. At trial, he gave forthright responses to questions regarding the accident:

> Q        All right.  Now let me ask you, are you claiming, Mr. Carrier, that you backed all of the way out and put your car in drive and had turned your [steering wheel] and were headed forward when this accident occurred?
>
>          . . . .
>
> A        I had not backed all the way out.
>
>          . . . .
>
> Q        This is all I want to know.  When you backed up out of that spot, are you telling the jury that you turned your [steering wheel] to go forward . . . ?
>
> A        I can't truthfully answer that question.

Also noteworthy is his acknowledgment that he never saw Mrs. Eldridge's truck approaching until the moment of impact.  Furthermore, at trial, he did not allege that Mrs. Eldridge was speeding or violating any law.

In *Shelvin v. Allstate Ins. Co.*,[4] we noted the difference between a motorist's duty of care when s/he is traveling with the right of way and the duty of care owed when a motorist enters or crosses a highway from a less favored position:

> A motorist who is about to enter a roadway from a private driveway is required to yield the right of way to all approaching vehicles so close as to constitute an immediate hazard. *Unusual*, *extreme*, and *high* care toward favored traffic is required of such a motorist under the case law.  Conversely, the duty of the driver on the favored street toward the intruding motorist is the much lesser ordinary care and that driver generally may rely on the assumption or presumption that those vehicles

---

[3]*Shelvin*, 747 So.2d at 162.

[4]99-833 (La.App. 3 Cir. 11/3/99), 747 So.2d 160.

entering the roadway from less favored positions such as a private drive will not drive into the path of favored traffic. The motorist who is otherwise proceeding lawfully on the favored street is not required to look out for or search in anticipation of careless drivers who might enter his right of way from a private driveway in violation of [La.R.S. 32:124]. . . . The presumption or assumption may *not* be relied on by a motorist who is proceeding unlawfully before or after he sees the intruding vehicle.[5]

The act of backing up a vehicle is not inherently negligent, but a backing motorist must exercise ordinary care to see that the maneuver will not injure the person or property of others.[6] However, the law mandates that a motorist, who backs from a private driveway into a main thoroughfare, exercise an unusually high degree of care; when executing such a maneuver s/he must proceed with the utmost caution to ensure that s/he can accomplish it without interfering with other vehicles.[7] The high degree of care imposed upon backing drivers or motorists entering a public road from a private lot protects those drivers traveling with the right of way from unexpected intrusions or hazards.[8]

"A backing motorist under this rule may be negligent for failing to observe traffic approaching on the right-of-way street in time to interfere with its passage[.]"[9] Therefore, the backing motorist has a duty to observe any vehicles immediately to his/her rear and <u>must maintain a constant lookout during the entire process of backing the vehicle</u>.[10]

It is clear, after comparing Mrs. Eldridge's testimony, as the majority quotes, with Mr. Carrier's candid responses detailed above, that all determinative facts related to the accident are undisputed. Thus, credibility determinations are not at issue, and, I do not find evidence in the record that supports the jury's fault allocation.

---

[5]*Id.* at 162 (quoting *Valin v. Barnes*, 550 So.2d 352, 355-56 (La.App. 3 Cir.), *writ denied*, 552 So.2d 399 (La.1989)).

[6]*Roy v. United Gas Corp.*, 163 So.2d 587 (La.App. 3 Cir.), *writ denied*, 165 So.2d 485 (La.1964).

[7]*Id.*; *Schackai v. Tenneco Oil Co.*, 436 So.2d 729 (La.App. 4 Cir.), *writ denied*, 440 So.2d 759 (La.1983).

[8]*Taylor v. Chism*, 27186 (La.App. 2 Cir. 8/23/95), 660 So.2d 145.

[9]*Roy*, 163 So.2d at 593.

[10]*Id.*

3

Accordingly, I believe that the jury's fault allocation was manifestly erroneous and would assess Mr. Carrier with liability.