## STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 19-212


KELLY DOUCET, ET AL.

VERSUS

HORNET SERVICE COMPANY, ET AL.


**********

APPEAL FROM THE
THIRTY-FIRST JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON DAVIS, NO. C-107-14
HONORABLE C. STEVE GUNNELL, DISTRICT JUDGE

**********

## SHANNON J. GREMILLION
## JUDGE

**********

Court composed of Shannon J. Gremillion, Candyce G. Perret, and Jonathan W. Perry, Judges.


**AFFIRMED.**

**Kenneth A. Doggett, Jr.**
**Attorney at Law**
**P.O. Box 13498**
**Alexandria, LA 71315-3498**
**(318) 487-4251**
**COUNSEL FOR PLAINTIFFS/APPELLANTS:**
    **Kelly Doucet**
    **Brittany Lacombe**

**Patrick T. Daniel**
**Rachel Martin-Deckelmann**
**Daniel & Associates**
**7941 Katy Freeway, #791**
**Houston, TX 77024**
**(713) 999-6666**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
    **Michael Ceasar**

**Michael J. Remondet, Jr.**
**Jeansonne & Remondet**
**P.O Box 91530**
**Lafayette, LA 70509**
**(337) 237-4370**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
    **Colony Insurance Company**
    **Kenneth DeMary**
    **Hornet Service Company, LLC**

**GREMILLION, Judge.**

Plaintiffs/appellants, Kelly Doucet and Brittany Lacombe, appeal the trial court's judgment in favor of defendants/appellees, Kenneth DeMary, Hornet Service Company, and Colony Insurance Company. Plaintiff/appellant, Michael Ceasar, appeals the jury's verdict in favor of defendants/appellees. These matters were tried in a bifurcated proceeding. For the reasons that follow, we affirm.

### FACTS AND PROCEDURAL POSTURE

This case asserts claims for personal injuries that appellants alleged they incurred in a motor vehicle accident on March 5, 2013, in the parking lot of Chad's Pawn Shop in Jennings, Louisiana. DeMary, an employee of Hornet Service Company, was driving a 2007 Dodge Ram 2500 company-owned truck on a personal mission to pay a bill owed to Chad's. While in Chad's, DeMary overheard Doucet discussing a prior accident and her need to retain an attorney to represent her in connection with that accident. Appellants testified that Doucet never even entered Chad's and that she and Ceasar remained in Doucet's vehicle while Lacombe and another passenger, Akeem Nixon, entered Chad's to pawn a DVD player and some discs.

As DeMary was leaving Chad's, he testified, his truck was idling in reverse. Although he had checked behind him to ensure he could back out safely and saw no vehicles behind him, DeMary struck the vehicle occupied by the appellants. Appellants testified that their vehicle, owned by Doucet, was the third vehicle in a line attempting to exit the lot and that they were completely stopped behind DeMary's vehicle when he backed into them. Ceasar testified that the force with which DeMary struck them almost rolled Doucet's vehicle over. This impact, though, created a barely discernable, fist-sized dent in the passenger-side door of Doucet's car roughly the size of DeMary's trailer-hitch ball.

Doucet's car had other damage along the passenger side. Appellants denied that any damage to the door pre-existed the subject collision. However, Sergeant Ricky Benoit of the Jennings Police Department, who responded to the accident, had worked another collision on February 24, 2013, in which Doucet's car received moderate side-swipe damage to the passenger side, including the front passenger door and front fender. Doucet denied that the door was damaged in the February collision.

Sergeant Benoit testified that he was dispatched to Chad's regarding the subject accident. The Jennings Police Department's policy is that Louisiana Uniform Crash Reports are only prepared following a collision on private property if there are injuries. While Sergeant Benoit had little recollection of the accident at trial—five years later—he was aware that he did not prepare a report, which means that no one reported any injuries at the scene. Appellants each testified that Sergeant Benoit did not ask whether they were injured.

None of the plaintiffs sought any treatment for injuries alleged to have been incurred in this accident for over a month. Lacombe, however, did go to the emergency room at Jennings American Legion Hospital, complaining only of right rib pain and denying that she suffered any trauma. All three plaintiffs saw Dr. Charles Deese, a Jennings chiropractor, for neck and back complaints. All three then saw Dr. David Barczyk, a Lafayette chiropractor. All three then saw Dr. Donald Dietze, a neurosurgeon in Baton Rouge who later stopped seeing patients in that city in favor of Lacombe, Louisiana, where he apparently continued to treat plaintiffs up to the date of trial. All three were diagnosed by Dr. Dietze with cervical disc disorders. Ceasar was also diagnosed with a lumbar disc herniation at the L5-S1 level for which an anterior discectomy and intervertebral body fusion was performed by Dr. Dietze in December 2014.

2

Plaintiffs cumulated the present action with the filing of a joint petition for damages on February 21, 2014. During the course of the litigation, the parties vigorously contested issues that were deemed by this court to be "excessive" and "frivolous," including the claim that DeMary was intoxicated and the applicability of the Federal Motor Carrier Act. *Doucet v. Hornet Serv. Co.*, 19-241, p. 6 (La.App. 3 Cir. 5/22/19), 273 So.3d 378, 382. (Holding that the trial court did not err in revoking Ceasar's pauper status and that he was not entitled to a reduction in the estimated appeal costs of *$56,225.50* in the present matter because of his abuse of the integrity of the judicial process).

Among the contested minutiae was the entitlement of Defendants to obtain independent medical examinations (IME) of Doucet and Ceasar by Dr. Michael Holland, an orthopedic surgeon in Jennings. After having been ordered to submit to an IME, Doucet and Ceasar refused to cooperate in the examination. Ceasar had been instructed to not speak to Dr. Holland, and he followed those instructions. Doucet refused to don a clinical gown for the examination. Dr. Holland was unable to even ascertain that Ceasar had undergone lumbar disc surgery because of the limitations he encountered in his IME. The parties also bickered about Dr. Holland's deposition, which will be discussed more fully later.

The matter eventually was tried, beginning on August 20, 2018. Ceasar's case was tried to a jury, while Doucet's and Lacombe's to the trial court judge. At trial, the deposition of Dr. Dietze was presented to the jury regarding his treatment of Ceasar. Dr. Holland testified in person. The jury returned a verdict on August 23, 2018, in which they found that neither DeMary nor Doucet were negligent. The trial court took Doucet's and Lacombe's cases under advisement. On October 12, 2018, the trial court issued the following written reasons, quoted in pertinent part:

3

After reviewing the testimony, evidence, and arguments of counsel, the Court makes the following findings in this case. The jury's verdict found that none of the drivers —DOUCET, DEMARY, or HORNET SERVICE COMPANY—were negligent. As a result, no damages were awarded to the plaintiff CEASAR. The plaintiffs have the burden of proof to show by a preponderance of the evidence that DEMARY was at fault for causing the accident and that the plaintiff suffered damages as a result. The Court can only speculate that CEASAR failed to carry that burden in front of the jury which resulted in their verdict.

As to the remaining plaintiffs, the Court finds that DEMARY, as a driver who is backing up his vehicle, had a duty of care and attention and to make sure that it was safe to back his vehicle. At the same time, DOUCET also had a duty to take reasonable steps to avoid the accident if she saw that DEMARY was backing up in the parking lot. Both DEMARY and DOUCET testified at trial that they had looked around before beginning to drive their vehicles and that neither one saw the other before the accident. Given the conflicting testimony and evidence presented at trial, the Court finds that DEMARY and DOUCET should each be found 50% at fault for causing this accident. Both drivers had a duty to see what should have been seen, and both drivers failed to perform this duty.

The plaintiffs also claimed that DEMARY was in the course and scope of his employment at the time of the accident, and therefore, HORNET SERVICE COMPANY should also bear some liability for the accident as well. The testimony at trial by DEMARY was that he was at Chad's Pawn Shop on March 5, 2013, in order to pay a personal bill. DEMARY stated that he was not on-call at the time of the accident and that he was a permissive user of the company vehicle. The Court finds that there was no credible testimony by any witness at trial to dispute DEMARY's version of events that he was conducting a personal errand at the time of the accident. Consequently, the Court finds that DEMARY was not in the course and scope of his employment at the time of the accident.

As to the issue of damages, as stated above, this was a low-speed, low-impact accident in the parking lot of Chad's Pawn Shop. At trial, all of the plaintiffs testified that the impact was so hard that it almost flipped the car. They also testified that there was no prior damage to the vehicle before this accident. However, the defendants called Officer Ricky Benoit of the Jennings Police Department as a witness, and he testified that DOUCET had been in another accident in the same vehicle a few weeks prior to the instant accident. The prior accident was described as a "side-swipe" accident that resulted in moderate damage to the same door panel that was affected in the instant accident. There were several pictures of the vehicle and door panel presented at trial, and after review, the Court believes that most of the damage to the vehicle was a result of the previous accident. There was minimal damage to the vehicle as a result of the parking lot accident, and the

4

testimony of the plaintiffs about the severity of the accident was not believable to the Court.

In addition, the Court had several problems with the credibility of DOUCET and LACOMBE with regard to the alleged damages they claimed they sustained. Both DOUCET's and LACOMBE's medical records for the years prior to the instant accident were introduced by the defense at trial. DOUCET alone visited the emergency room of the Jennings American Legion Hospital thirty-one (31) times in the few years before and after the accident for issues such as toothaches, falls, and bruised fingers; however, she did not go for medical care after the accident in question until over a month had passed. Furthermore, some of the injuries that DOUCET claimed were a result of this accident (spinal, shoulder, neck, and knee injuries) were also reported previously to the doctors in the ER in the years before the accident. Finally, the defense's expert, Dr. Michael Holland, testified that his professional opinion was that DOUCET was not injured as a result of this accident. DOUCET also refused to be physically examined by Dr. Holland during an IME on the advice of her attorney. Consequently, the Court finds that DOUCET was not a credible witness and that she did not suffer any damages as a result of the accident in question.

With regard to LACOMBE, the Court makes similar findings. LACOMBE had fifteen (15) visits to the ER in the few years prior to the accident for issues such as bug bites, ulcers, and a sore throat. Three (3) days after the accident, LACOMBE went to the hospital for her alleged injuries. According to her own testimony, the ER doctors sent her home because she was not injured. In addition, LACOMBE was also a passenger in DOUCET's vehicle in the prior side-swipe accident that caused moderate damage. Based upon her own testimony and the medical records, the Court finds that LACOMBE was not a credible witness and that she did not suffer any damages as a result of the accident in question. The Court finds that both DOUCET and LACOMBE were untruthful in their testimony and that their version of events was not believable.

Ceasar filed a motion for new trial and for judgment notwithstanding the verdict on September 10, 2018. That motion was heard by the trial court on September 25. Although the transcript of that hearing is not contained in the record, the minutes are, and they reflect that the trial court felt that the credibility of Ceasar, Doucet, and Lacombe were seriously questioned not only by the trial court but also the jury. Ceasar's motion was denied.

Appellants then perfected devolutive appeals.

5

# ASSIGNMENTS OF ERROR

Ceasar presents the following as his assignments of error:

1. A *de novo* analysis is mandated to harmonize irreconcilable/inconsistent verdicts in bifurcated trials when the jury found NO party at fault and the judge apportioned fault 50/50 between the parties.

2. The jury's analysis was manifestly erroneous because it assigned **_NO_** fault to any party and fault did not reach 100% as demanded by the Louisiana Supreme Court in its Plain Civil Jury Instructions and jurisprudence.

3. The Trial Court's fault analysis is manifestly erroneous because it failed to apply the Guest Passenger presumption and duty of a backing vehicle to an accident where Defendant admitted fault.

4. A *de novo* analysis of liability would apply the guest passenger presumption and the duty of a backing vehicle to presume Appellant, a guest passenger, was faultless and entitled to significant damages following his spinal surgery.

5. A *de novo* analysis of damages is mandated because Appellant's entitlement to damages was neither evaluated nor assessed by either the jury or the Trial Court/judge.

6. The jury was unduly prejudiced throughout the trial proceedings due to repeated commentary by Defense Counsel regarding Appellant's Counsel's domicile, counsel's role in treatment and non-local "us versus them" disingenuous misrepresentations.

7. Dr. Michael Holland erroneously testified following denial of Appellant's Motion in Limine when Dr. Michael Holland ignored and disregarded the Court's Order for his refusal to produce his file and other court ordered documents or present himself for deposition.

Lacombe and Doucet assert the following assignments of error:

A. The trial court erred in finding Kelly Doucet 50% at fault for causing the March 5, 2013, motor vehicle accident involving Kenneth DeMary when four witnesses testified that Kenneth DeMary backed up into Kelly Doucet's vehicle while it was waiting in line to leave the parking lot of Chad's Pawn Shop.

B. The trial court erred in finding that Kenneth DeMary was not within the course and scope of his employment at the time of the subject accident when he operated a company owned vehicle, subjected to 24 hour call, and paid travel time.

6

C. The trial court erred in finding Kelly Doucet and Brittany Lacombe sustained no injuries when it failed to consider any medical evidence submitted by the Plaintiffs and only considered the evidence submitted by the Defendants.

D. The trial court erred in finding Kelly Doucet and Brittany Lacombe's injuries were not related to the subject accident when it completely disregarded Plaintiffs' treating physicians medical records and only reviewed irrelevant medical records and biased testimony from a physician hired by the defense.

## ANALYSIS

**I. De novo review**

Ceasar suggests many reasons to justify this court conducting a de novo review of the evidence.

*Inconsistent verdicts*

Ceasar argues that the differing apportionments of fault by the jury in his case and the trial judge in Doucet's and Lacombe's cases represent inconsistent verdicts that warrant de novo review by this court. Ceasar's argument rests upon the decision in *Hebert v. Rapides Parish Police Jury*, 05-471 (La.App. 3 Cir. 7/12/06), 934 So.2d 912, *rev'd.*, 06-2001, 06-2164 (La. 4/11/07), 974 So.2d 635. *Hebert* involved a tragic accident in which a young motorist was killed when her vehicle struck a bridge railing. Her parents sued the Rapides Parish Police Jury and the State of Louisiana through the Department of Transportation and Development. The parents' demands against the police jury were heard by the judge and those against DOTD were heard by a jury. The judge found the young driver sixty percent at fault and the police jury was assessed forty percent fault. The jury found the police jury and DOTD each fifty percent at fault. This court held on appeal that de novo review of the record was required in order to reconcile the two different assessments of fault against the police jury.

7

In *Hebert*, the parents were *required* to assert all their claims in one suit. *See,* La.Code Civ.P. art. 425(A). Appellants *chose* to cumulate their actions pursuant to La.Code Civ.P. art. 463.

> [E]ach party's demand for the enforcement of a legal right against each defendant is regarded as a separate action which may be cumulated in a single suit, providing (a) there is a community of interest, (b) each of the actions is within the jurisdiction of the court and at the proper venue, and (c) all actions are mutually consistent and employ the same form of procedure.

*Bank of New York Mellon v. Smith*, 11-60, p. 17-18 (La.App. 3 Cir. 6/29/11), 71 So.3d 1034, 1046-47, *writ denied*, 11-2080 (La. 11/18/11), 75 So.3d 462 (quoting *Texas Gas Transmission Corp. v. Gagnard*, 223 So.2d 233, 237 (La.App. 3 Cir. 1969)). Each appellant could have filed a separate action; had they done so appellants would have no reason to complain of "inconsistent" verdicts. Their actions could have been tried separately under La.Code Civ.P. art. 465.

The verdicts in *Hebert* were inconsistent because they resulted in one party's obligation to another being indeterminate. The parents were unable to determine whether the police jury was forty or fifty percent at fault.

Such is not the case before us. Ceasar was one alleged obligee asserting a demand against one alleged tortfeasor, the alleged tortfeasor's employer, and its insurer. Doucet and Lacombe are, likewise, individual alleged obligees asserting demands against one alleged tortfeasor, his employer, and its insurer. The verdict rendered by the jury adjudicated DeMary's alleged obligation to Ceasar. The trial judge's ruling adjudicated DeMary's alleged obligations to Doucet and to Lacombe. While the verdicts are not "consistent" as that word might be commonly understood, they are not inconsistent as to Ceasar or as to Doucet or as to Lacombe.

In *Hartec Corp. v. GSE Associates, Inc.*, 10-1332, p. 12 (La.App. 1 Cir. 2/24/12), 91 So.3d 375, 384, *writ denied*, 12-972 (La. 6/22/12), 91 So.3d 972, our

8

colleagues on the first circuit, in a matter involving a bifurcated trial of a main demand by a jury and an incidental demand against a third party by the judge, found "no need to reconcile the verdicts as each can be implemented regardless of the other." Inconsistent verdicts arise when "[t]he allocation of fault between the parties by the jury conflicts with the allocation of fault by the judge as to the same parties." *Id*. at 383.

In the present matter, the allocations of fault were not between the same parties, as Ceasar alone asserted an action against the defendants that was tried by the jury apart from the actions of Doucet and Lacombe. The verdicts were not inconsistent, and we are precluded from reviewing the verdicts de novo on that basis.

*Finding by the jury of no fault on any party*

Ceasar also suggests that de novo review is warranted "because [the jury] assigned **_NO_** fault to any party and fault did not reach 100% demanded by the Louisiana Supreme Court in its Plain Civil Jury Instructions[.]"

Ceasar further supports his argument with *Derouen v. American Employer's Insurance Company*, 240 La. 48, 123 So.2d 896 (1960), which he claims stands for the proposition that, "***[i]n no case can a Trial Court find that both defendants exculpated themselves, because it is basic to an application of the rule that one or the other of the parties must have been at fault.***" This quotation is not found in *Derouen*; it comes from *Michel v. State Farm Mutual Automobile Insurance Company*, 314 So.2d 535, 539 (La.App. 1 Cir.1975). The first circuit in *Michel* was discussing the rule that "[w]hen an innocent party is injured through the concurrent acts of two parties under circumstances where one or the other must be at fault, the burden is upon these parties to exculpate themselves from negligence." *Id.* at 538. The court proceeded to state:

9

> The rule does not exempt a plaintiff from the ultimate requirement that he prove his case. It merely provides the plaintiff with an early advantage in the trial of the case. This advantage, however, may be obtained only after the plaintiff has first proved his own innocence and then that circumstances compel a finding that one or the other defendants was at fault.

*Id.* What Ceasar neglected to quote was the sentence that followed the one he quoted: "If both parties were innocent, then the rule was not applicable in the first place." *Id.* at 539. Clearly, both defendants can exculpate themselves from fault.

An old and well-established rule of law states that the occurrence of an accident does not carry a presumption of negligence or fault. *Henry v. Brackenridge Lumber Co.*, 48 La.Ann. 950, 20 So. 221 (1896). Without the existence of a duty and a breach of that duty that is a cause-in-fact of damage, there is no negligence. *See Pierre v. Allstate Ins. Co.*, 257 La. 471, 242 So.2d 821 (1970). The jury in this case found neither DeMary nor Doucet at fault. "A finding of fault is a finding of fact." *Felice v. Valleylab, Inc.*, 520 So.2d 920, 924 (La.App. 3 Cir.1987), *writs denied*, 522 So.2d 562, 563 (La.1988). This finding does not constitute legal error, and we cannot review the jury's findings de novo on that basis.

The assessments of fault will be reviewed under the manifest error standard. *Id.*

*Failure of the jury to assess damages*

As we have already noted, liability assumes the existence of a duty, the breach of that duty, and cause-in-fact of damages. *Id.* If the jury's determination of fault is not manifestly erroneous, this assignment of error is rendered moot; if it is manifestly erroneous, this court will assess damages de novo.

*The trial court's finding that Brittany Lacombe was a passenger in Doucet's car on February 24, 2013*

Ceasar also argues that the trial court's determination that Brittany Lacombe was a guest passenger in Kelly Doucet's vehicle in the previous accident also creates a situation that demands de novo review. He argues that when an appellate court determines that a trial court has committed manifest error, it must then conduct a de novo review of all the facts of the case. We disagree. Ceasar cites no authority for the proposition. We review cases for manifest error, which, if found, are corrected. Manifest error on one question of fact does not render all determinations of fact invalid. We, again, decline to conduct a de novo review of the entire case on the basis of this one potential error.

A de novo review of neither the jury's verdict nor the trial court's ruling is warranted. This assignment of error lacks merit.

## II. Liability and damages

Ceasar argues next that "[t]he trial court's fault analysis is manifestly erroneous because it failed to apply the Guest Passenger Presumption and duty of a backing vehicle to an accident where Defendant admitted fault." We will first address Ceasar's contention that fault was admitted.

DeMary admitted that his vehicle struck Doucet's vehicle. He admitted that his hitch ball caused damage to Doucet's door. He did not admit fault, though.

The negligence of a driver is not imputed to her guest passenger, who ordinarily has virtually no control over the actions of the driver. *Robinette v. Old Republic Ins. Co.*, 17-79 (La.App. 3 Cir. 10/4/17), 229 So.3d 61, *writ denied*, 17-1871 (La. 1/9/18), 231 So.3d 648. Fault can be imposed on the guest passenger when he and his driver are engaged in a joint venture, when he actually commits an act that causes the accident, or when he has actual or constructive knowledge of any

11

condition that might render the driver incompetent or impaired. *Id.* The jury, though, assessed no fault to Ceasar.

### *The liability assessments*

The trial court's and jury's liability assessments are scrutinized under the manifest error standard; the issue is not whether the trial court was right or wrong, but whether its conclusions were reasonably supported by the whole record. *Stobart v. State, Dep't of Transp. and Dev.*, 617 So.2d 880 (La.1993). "Even though an appellate court may feel its own evaluations and inferences are more reasonable than the factfinder's, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony." *Id.* at 882.

> If the factual findings are reasonable in light of the record reviewed in its entirety, a reviewing court may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. [*Stobart*] at 882–883. Accordingly, *where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous*. *Id.* at 883.
>
> Nonetheless, where documents or objective evidence so contradict a witness's story, or the story itself is so internally inconsistent or implausible on its face that a reasonable factfinder would not credit the witness's story, a reviewing court may well find manifest error. *Rosell v. ESCO,* 549 So.2d 840, 844-45 (La.1989). Where such factors are not present, however, and a factfinder's determination is based on its decision to credit the testimony of one of two or more witnesses, *that finding can virtually never be manifestly erroneous or clearly wrong. Id.*

*S.J. v. Lafayette Par. Sch. Bd.*, 09-2195, pp. 12-13 (La. 7/6/10), 41 So.3d 1119, 1127–28 (emphasis added).

The trial court examined the testimonies of Doucet and DeMary, both of whom claimed to have been behaving in a reasonable and prudent manner and both of whom testified that, despite paying attention to their surroundings, they did not see the other before the collision. DeMary testified that he had barely begun moving

when the collision occurred; Doucet and the other occupants of her car described a titanic collision. DeMary testified that there were no obstacles in his path when he began moving. Doucet and her passengers stated that they had been stationary behind DeMary for a considerable period of time before he rammed them.

In *Eldridge v. Carrier*, 04-203 (La.App. 3 Cir. 11/17/04), 888 So.2d 365, *writ denied*, 04-3174 (La. 3/11/05), 896 So.2d 66, the defendant was backing from an angled parking space on Sixth Avenue in Oberlin, Louisiana, when his rear was hit by the front of the plaintiffs' vehicle. The jury questionnaire asked, "Was the defendant . . . at fault and was such fault a cause in fact of the accident?" The jury answered, "No." In affirming the jury, we stated:

> Based upon our review, the record was sufficient to support the jury's finding that the plaintiff had not proven by a preponderance of the evidence that the defendant was at fault and such fault was a cause in fact of the accident. The record reflects that both the plaintiff and the defendant, as well as Ms. Durio and the investigating officer, testified regarding the circumstances surrounding the accident. The jury was able to consider their testimony and assess the credibility of each witness in reaching its decision. Although the plaintiffs point to jurisprudence indicating that a motorist backing his vehicle owes a high duty of care to perform the maneuver reasonably, we find no manifest error in the jury's finding that the plaintiffs failed to prove Mr. Carrier's breach of this duty by a preponderance of the evidence. Both drivers testified that they were moving at a slow rate of speed and maintaining a proper lookout, yet both drivers also testified that they did not see the other until the accident or the instant before it. The jury was also made aware of the drivers' ability to see, including obstructions to the roadway, and heard assertions from each driver regarding exactly what he or she did see. The jury further considered the conflicting testimony of the witnesses regarding their recollection of the events. Given this presentation of evidence, we find no clear error in the jury's decision either to credit Mr. Carrier's testimony regarding his checking the roadway or to discredit Ms. Eldridge's testimony regarding her approach. Thus, the record supports the jury's determination.

*Id.* at 369-70 (footnotes omitted). A backing motorist is tasked with exercising reasonable care under the circumstances. *See Roy v. United Gas Corp.*, 163 So.2d 587 (La.App. 3 Cir.), *writ refused*, 246 La. 593, 165 So.2d 485 (1964). If a finder of fact is free to determine that a driver backing into a roadway is free of negligence

when he and a vehicle on the roadway collide, the more so may a factfinder determine that one backing from a parking space in a parking lot—where such occurrences are far more common—is free from negligence or that both drivers were equally culpable.

This is doubly the case when the factfinder determines that one or more occupants lacks credibility. The occupants of Doucet's car testified that they were stopped for some time behind DeMary's truck. DeMary said they were not. One of them is mistaken; the factfinder is free to believe either, and we are not free to reverse those findings absent circumstances "where documents or objective evidence so contradict a witness's story, or the story itself is so internally inconsistent or implausible on its face that a reasonable factfinder would not credit the witness's story[.]" *S.J.*, 41 So.3d at 1127. No such circumstances call into question DeMary's version of the accident. The assessments of fault are affirmed.

### *Damages*

We need not review Ceasar's contention that the trial court failed to award him damages, as we have already announced our affirmation of the jury's assessment of fault. Doucet and Lacombe both complain that, "The trial court erred in finding Kelly Doucet and Brittany Lacombe sustained no injuries when it failed to consider any medical evidence submitted by the Plaintiffs and only considered the evidence submitted by the Defendants." The evidence submitted by the defendants to which Doucet and Lacombe refer are the many times they presented themselves to Jennings American Legion Hospital for treatment of sore throats, bug bites, and toothaches; yet, they did not seek medical treatment for any condition that they related to this accident until several weeks after the accident.

The trial court was correct that Lacombe did present to the emergency room of Jennings American Legion Hospital three days after the accident, but, as we have

14

already noted, she denied having suffered any trauma. The trial court did manifestly err in finding that Lacombe was a passenger in Doucet's car in the February 2013 accident, but we do not find that the trial court erred in finding that Lacombe was not a credible witness or that she was not injured in the accident.

We note both women testified that they suffered immediate pain. However, Sergeant Benoit testified that had anyone complained of injuries, he would have completed a Uniform Crash Report. No report was completed, so no one complained of injuries, according to Sergeant Benoit.

Despite the appellants' protestations that this collision threatened to shatter worlds, the physical evidence shows that this was an *extremely* minor collision. In particular, photographs of the Doucet vehicle depict extensive damage along the passenger door from slightly above the midline and down. DeMary's truck, though, was "lifted," and the point of impact, which DeMary circled in pen, sits higher than the other damage and can be reasonably interpreted as a fist-sized *or smaller* dent.

Given these factors—the extremely minor nature of the damages to the vehicle; the wildly differing testimony regarding the force of the collision; the insistence that Sergeant Benoit did not ask them whether they were injured; the long gap between the accident, when plaintiffs claimed they first suffered symptoms, and when they first sought medical attention they related to the accident; and the excuses given for not seeking medical attention juxtaposed to treatment for seemingly insignificant complaints in the past—we cannot conclude that the trial court erred in finding that neither Doucet nor Lacombe suffered injuries in this collision.

*Consideration of the medical evidence*

Doucet and Lacombe complain that the trial court discounted the medical evidence they presented and only gave weight to that presented by the defendants. Doucet and Lacombe presented the certified records from their various medical

providers. These records make it clear that any causation opinions expressed were based solely upon the medical histories Doucet and Lacombe gave the providers. Further, in Doucet's case, Dr. Holland gave testimony in court regarding the lack of objective findings of injury. He also testified about Doucet's obstruction of the IME. Given the trial court's findings about the credibility of Doucet and Lacombe, we cannot say that the trial court erred. A trier of fact is tasked with evaluating the credibility of expert witnesses and may accept or reject the opinions expressed by an expert just as with a lay witness. *Ryan v. Zurich Am. Ins. Co.*, 07-2312 (La. 7/1/08), 988 So.2d 214. The opinions of a treating physician are not exempt from this rule. *See Davis v. State ex rel. Dep't of Transp. and Dev., Office of Risk Mgmt.*, 09-288 (La.App. 3 Cir. 11/10/09), 27 So.3d 969.

*Undue prejudice*

Plaintiffs complain that counsel for the defendants poisoned the jury against them by harping on Ceasar's counsel's domicile in Houston, Texas. They also complain that "the role of Appellant's counsel in [Ceasar's] medical treatment" and the creation of an "us versus them" environment tainted the jury. Some of these comments revolved around Dr. Dietze's office location relative to plaintiffs' homes.

In three days of trial testimony and colloquy, we found one reference, which was cited by plaintiffs, to the fact that Ceasar's counsel was from Houston. The issue of Dr. Dietze's office was repeatedly referenced, and we find nothing inappropriate in this questioning. One can legitimately ask why a party would seek medical attention 175 miles away when there are qualified local physicians.

This issue was the subject of a pretrial motion filed by plaintiffs. The trial court never ruled on this motion. Silence equals rejection. *Chesne v. Elevated Tank Applicators, Inc.*, 04-46 (La.App. 3 Cir. 5/12/04), 874 So.2d 333, *writ denied*, 04-1439 (La. 9/24/04), 882 So.2d 1141. We find no error in the trial court's rejection.

There is, further, no showing of prejudice against Ceasar based upon irrelevant factors. This assignment of error lacks merit.

*Dr. Holland's testimony*

Lastly, Ceasar argues that Dr. Holland should not have been allowed to testify because the trial court ordered him to produce a litany of information in response to discovery requests. Further, Dr. Holland should not have been allowed to testify because, Ceasar claims, he "never presented for deposition." However, Ceasar does admit that Dr. Holland produced twelve pages of responses to his discovery. And Dr. Holland testified that, while he failed to appear for his first-scheduled deposition, he had set aside an entire day of his schedule for a second deposition that was cancelled by Ceasar's attorney the morning it was to have been taken. It was never rescheduled.

The claim that Dr. Holland never presented for a deposition is belied by the doctor's testimony at trial. It was not contradicted. And Ceasar made no showing that the twelve pages of documents did not represent everything in his possession that satisfied the discovery request. We find no error in the trial court's decision to allow Dr. Holland to testify.

*Course and scope*

Doucet and Lacombe argue that the trial court erred in determining that DeMary was not in the course and scope of his employment with Hornet, such that Hornet should be held vicariously liable for their injuries. This assignment is moot for two reasons: we have determined that the trial court did not err in finding that Doucet and Lacombe were not injured, and Hornet's insurer, Colony Insurance Company, accepted coverage for the alleged injuries.

**CONCLUSION**

The collision that gave rise to this suit was very minor. The plaintiffs waited a considerable length of time before seeking any medical attention. Their accounts of the accident are contradicted by the physical evidence. Given these factors, we cannot conclude that either the jury or the trial court manifestly erred.

All costs of these proceedings are taxed to plaintiffs/appellants, Kelly Doucet, Michael Ceasar, and Brittany Lacombe.

**AFFIRMED.**